771 A.2d 1061

**FURNITURELAND SOUTH, INC. et al.,**

**v.**

**COMPTROLLER OF THE TREASURY OF THE STATE of Maryland.**

**No. 6, Sept. Term, 2000.**

Court of Appeals of Maryland.

May 9, 2001.

Motion for Reconsideration Denied June 1, 2001.

H. Bryan Ives, III (Lee R. Rimler and John A. Stoker of Alston & Bird, L.L.P., Charlotte, NC; Andrew H. Levine, Gerard R. Vetter of Goldman & Vetter, P.A., Baltimore) all on

brief, and Kim D. Mann (Shawn Mann, L.L.P., on brief), Washington, DC, for appellants.

Deborah B. Bacharach, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, and Kathleen A. Morse, Assistant Attorney General, on brief), Baltimore, for appellee.

Paull Mines, General Counsel, Sheldon H. Laskin, Director, National Nexus Program, Washington, DC, brief of the Multistate Tax Commission filed on behalf of the appellee, amicus curiae.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY,* RAKER, WILNER, CATHELL and HARRELL, JJ.

ELDRIDGE, Judge.

The instant case is a declaratory judgment action brought by the Comptroller of Maryland seeking a judicial determination that the defendants, two North Carolina corporations, are vendors within the meaning of Title 11 of the Tax–General Article of the Maryland Code and are, therefore, required to collect state sales and use taxes from their Maryland customers. Because the Comptroller failed to invoke and exhaust the prescribed statutory administrative and judicial review remedies for resolution of this tax issue, we shall be unable to reach the merits of the case.

## I.

Maryland Code (1988, 1997 Repl.Vol.), § 11–102(a) of the Tax–General Article imposes a tax upon a sale in the State, or a use in the State, of tangible personal property or a taxable service. A vendor of the property or service is responsible for the collection of the sales and use tax from the buyer at the

---

* Rodowsky, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

time that the sale is made or at the time the use becomes taxable. § 11–403(a). The vendor then remits the tax with a return that covers the period in which the vendor makes that sale. § 11–601(b)(1).

A vendor for purposes of the sales and use tax includes a person who "engages in the business of an out-of-state vendor." § 11–101(m)(1)(i). Section 11–701(b) further provides that engaging in the business of an out-of-state vendor means "to sell or deliver tangible personal property or a taxable service for use in the State" and includes:

"(i) permanently or temporarily maintaining, occupying, or using any office, sales or sample room, or distribution, storage, warehouse, or other place for the sale of tangible personal property or a taxable service directly or indirectly through an agent or subsidiary;

(ii) having an agent, canvasser, representative, salesman, or solicitor operating in the State for the purpose of delivering, selling, or taking orders for tangible personal property or a taxable service; or

(iii) entering the State on a regular basis to provide service or repair for tangible personal property."

A "salesman, representative, peddler, or canvasser" who acts as an agent of a vendor subject to the sales and use tax may, in the discretion of the Comptroller, be held jointly responsible for the payment of the tax. § 11–101(m)(2).

Under Article VI, § 2, of the Maryland Constitution, the Comptroller is charged with the duty to "superintend and enforce the prompt collection of all taxes and revenue; adjust and settle, on terms prescribed by law, with delinquent collectors and receivers of taxes and State revenue . . . ." The Comptroller is responsible for administering the laws that relate to the Maryland sales and use tax. § 2–102(9) of the Tax–General Article.

Furnitureland South, Inc. is a nationwide furniture retailer with three locations in the area of Jamestown and High Point, North Carolina. Furnitureland has no showrooms or other facilities outside of North Carolina. It does not own or rent

any real property, or store furniture or other personal property, in Maryland. Furnitureland does not send unsolicited promotional materials to Maryland residents or otherwise initiate direct contact with Maryland customers.

Prior to 1991, Furnitureland had its own fleet of trucks and drivers to make furniture deliveries in North Carolina and throughout the other eastern states. Furnitureland's president, Darrell Harris, decided to separate the interstate delivery portion of the business from the retail operation. The decision was made, at least in part, to avoid collecting sales and use taxes for other states. Harris was advised by his attorney that, as long as Furnitureland delivered only by common carrier and had no other contacts with the taxing state, it would not be obligated to collect other states' sales and use taxes.

Royal Transport, Inc. was established in 1991 as a long distance trucking company. Furnitureland provided Royal with initial financing and technical assistance. The two companies have never shared employees, officers, directors, or shareholders. Royal does not maintain offices, facilities, or equipment in Maryland, and it does not own or lease any real property in Maryland. Furnitureland has employed Royal as its primary furniture delivery carrier since Royal's inception. Prior to 1998, Furnitureland was Royal's only customer. When it makes a delivery of Furnitureland's products in Maryland, Royal does not collect the sales and use taxes from Furnitureland's customers.

Following the refusal of Furnitureland and Royal to submit to a sales and use tax audit, the Comptroller filed in the Circuit Court for Anne Arundel County a complaint for declaratory and injunctive relief against Furnitureland and Royal. The Comptroller sought a declaration that Furnitureland and Royal are "vendors within the meaning of Title 11 of the ... Tax–General Article, and are therefore required to collect Maryland sales and use tax from Furnitureland's Maryland customers and remit the same to the plaintiff." The Comptroller also sought "an injunction enjoining defendants, jointly

and severally, from failing to collect and remit Maryland sales and use tax from Furnitureland's Maryland customers."

In the Circuit Court, the Comptroller asserted that Furnitureland is a vendor within the meaning of § 11–101(m)(1)(i) and § 11–701(b)(2)(ii) because it sells furniture for use in Maryland and has the furniture delivered, assembled, and set up in Maryland by Royal, acting as its agent or representative. Royal, the Comptroller alleged, acts as a private or contract carrier, and not a common carrier, when it delivers furniture to Furnitureland's Maryland customers. Therefore, according to the Comptroller, Royal is also a vendor within the meaning of § 11–101(m)(2). The Comptroller contended that the use of the furniture sold to Furnitureland's Maryland customers becomes taxable upon its delivery to those customers and that Royal is jointly responsible with Furnitureland for the collection of the sales and use tax from Furnitureland's customers.

Furnitureland and Royal defended on the ground that they are not out-of-state vendors within the meaning of the Maryland sales and use tax. The defendants further asserted that the Commerce Clause of the United States Constitution, Article I, § 8, cl. 3, prohibits the application of the Maryland sales and use tax statutes to them because they do not have a substantial nexus with the State. The defendant Royal also argued that the Interstate Commerce Act, 49 U.S.C. §§ 10101 *et seq.*, which regulates interstate motor carriers, preempts the State from imposing sales and use tax collection duties on Royal.

The trial consisted of a joint stipulation of facts, additional evidence, and argument. Thereafter, the Circuit Court declared that Furnitureland and Royal, acting as Furnitureland's agent, were out-of-state vendors within the meaning of Maryland's sales and use tax statutes and were, therefore, obligated to register as vendors and collect and remit sales and use taxes to the Comptroller. The court further concluded that the Maryland sales and use tax statutes, as applied to the defendants, satisfied constitutional requirements because a substantial nexus existed between the State and the defen-

dants. The court held, therefore, that Furnitureland and Royal are jointly responsible for the collection of Maryland sales and use tax on all goods that Furnitureland sells and Royal delivers to customers in Maryland. The court also issued an order pursuant to the Comptroller's request for injunctive relief.

Both Furnitureland and Royal timely noted appeals to the Court of Special Appeals. This Court issued a writ of certiorari on its own motion before argument in the intermediate appellate court. *Furnitureland v. Comptroller*, 358 Md. 381, 749 A.2d 171 (2000). As previously mentioned, we shall not reach the substantive tax and constitutional issues raised by the parties and decided by the Circuit Court. Instead, we shall vacate the judgment below on the ground that Maryland law required the Comptroller to invoke and exhaust the administrative and judicial review remedies provided in the Tax–General Article for the resolution of tax disputes.

## II.

Although no party has raised any question regarding the invocation and exhaustion of administrative remedies, and the propriety of a declaratory judgment action, these are issues which this Court will address *sua sponte*. *See Utilities v. WSSC*, 362 Md. 37, 44, 763 A.2d 129, 132–133 (2000) (propriety of a declaratory judgment action); *Montgomery County v. Broadcast Equities*, 360 Md. 438, 450–451 n. 7, 452, 758 A.2d 995, 1002 n. 7, 1003 (2000) (need to invoke and exhaust administrative remedies).

■ The Maryland Declaratory Judgment Act, Code (1974, 1998 Repl. Vol.), § 3–409(b) of the Courts and Judicial Proceedings Article, limits the use of declaratory judgments, stating:

"(b) Special form of remedy provided by the statute.—If a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle."

Thus, in Maryland, it is well established that where there exists a special statutory remedy for a specific type of case, and the Legislature intends that remedy to be exclusive or primary, a party may not bypass the special statutory remedy by bringing an action for a declaratory judgment or for equitable relief. *See, e.g., Utilities v. WSSC, supra,* 362 Md. at 45, 763 A.2d at 133; *Montgomery County v. Broadcast Equities, supra,* 360 Md. at 461, 758 A.2d at 1008 (2000); *Josephson v. Annapolis,* 353 Md. 667, 674–678, 728 A.2d 690, 693–695 (1998); *Holiday Point Marina v. Anne Arundel County,* 349 Md. 190, 201–203, 707 A.2d 829, 834–836 (1998); *Zappone v. Liberty Life,* 349 Md. 45, 63–66, 706 A.2d 1060, 1069–1071 (1998); *Maryland Reclamation v. Harford County,* 342 Md. 476, 492, 677 A.2d 567, 575 (1996); *Insurance Commissioner v. Equitable Life Assurance Society,* 339 Md. 596, 619, 664 A.2d 862, 874 (1995); *Maryland Commission on Human Relations v. Mass Transit Administration,* 294 Md. 225, 232–233, 449 A.2d 385, 389 (1982); *Leatherbury v. Gaylord Fuel Corp.,* 276 Md. 367, 376, 347 A.2d 826, 831–832 (1975). We recently pointed out that this principle applies whether the prescribed special statutory remedy begins with an adjudicatory administrative proceeding or with a special judicial proceeding. *See Utilities, supra,* 362 Md. at 45, 763 A.2d at 133.

Moreover, where the Legislature has provided an administrative remedy for a particular matter or matters, there is a presumption that the Legislature intended such remedy to be primary and intended that the administrative remedy must be invoked and exhausted before resort to the courts. *See, e.g., Josephson v. Annapolis, supra,* 353 Md. at 675, 728 A.2d at 694; *Zappone v. Liberty Life, supra,* 349 Md. at 63, 706 A.2d at 1069; *Maryland Reclamation v. Harford County, supra,* 342 Md. at 493, 677 A.2d at 576; *Luskin's v. Consumer Protection,* 338 Md. 188, 194–199, 657 A.2d 788, 791–793 (1995); *Board v. Secretary of Personnel,* 317 Md. 34, 42–43, 562 A.2d 700, 704 (1989); *Clinton v. Board of Education,* 315 Md. 666, 678, 556 A.2d 273, 279 (1989); *Board of Ed. for Dorchester Co. v. Hubbard,* 305 Md. 774, 786, 506 A.2d 625,

631 (1986) ("we have ordinarily construed the pertinent enactments to require that the administrative remedy be first invoked and followed").

Accordingly, this Court has consistently treated the special statutory administrative remedies for the determination of tax questions to be exclusive or primary. *See, e.g., Goldstein v. Time–Out Family Amusement,* 301 Md. 583, 590, 483 A.2d 1276, 1280 (1984); *White v. Prince George's County,* 282 Md. 641, 649, 387 A.2d 260, 265 (1978); *State Dept. of Assessments & Tax. v. Clark,* 281 Md. 385, 401–403, 380 A.2d 28, 37–38 (1977); *Gager v. Kasdon,* 234 Md. 7, 9, 197 A.2d 837, 838 (1964); *Tanner v. McKeldin,* 202 Md. 569, 578, 97 A.2d 449, 453 (1953); *Reiling v. Comptroller,* 201 Md. 384, 388, 94 A.2d 261, 263 (1953); *American Bank Stationery Co. v. State,* 196 Md. 22, 26, 75 A.2d 86, 87 (1950); *Williams v. Tawes,* 179 Md. 224, 228, 17 A.2d 137, 139 (1941); *Tidewater Oil Co. v. Anne Arundel County,* 168 Md. 495, 500, 178 A. 221, 223 (1935); *Baltimore Steam Packet Co. v. Mayor and City Council of Baltimore,* 161 Md. 9, 16, 155 A. 158, 161 (1931); *Schluderberg Co. v. Mayor and City Council of Baltimore,* 151 Md. 603, 613–615, 135 A. 412, 415–416 (1926).

As Judge Orth for the Court emphasized in a tax case, *State Dept. of Assessments & Tax. v. Clark, supra,* 281 Md. at 401, 380 A.2d at 37, "when an administrative remedy is provided by statute, relief provided under those statutory provisions must be exhausted before a litigant may resort to the courts." In *Soley v. Commission on Human Relations,* 277 Md. 521, 526, 356 A.2d 254, 257 (1976), this Court addressed the reasons underlying the general requirement of exhaustion:

"The rule requiring exhaustion of administrative remedies or statutory remedies is supported by sound reasoning. The decisions of an administrative agency are often of a discretionary nature, and frequently require an expertise which the agency can bring to bear in sifting the information presented to it. The agency should be afforded the initial opportunity to exercise that discretion and to apply

that expertise. Furthermore, to permit interruption for purposes of judicial intervention at various stages of the administrative process might well undermine the very efficiency which the Legislature intended to achieve in the first instance. Lastly, the courts might be called upon to decide issues which perhaps would never arise if the prescribed administrative remedies were followed."

■ The General Assembly has provided special statutory remedies for the resolution of sales and use tax controversies. These provisions, involving both administrative and judicial proceedings, are comprehensive and encompass the type of dispute involved in the case at bar. The statutory provisions give the Comptroller remedies when a "person" fails to file a sales and use tax return or fails to keep or disclose records of retail sales.[1]

Section 13–302 of the Tax–General Article contains the Comptroller's general enforcement powers, authorizes the Comptroller to subpoena records, and authorizes a judicial action if a person fails to comply with a subpoena.[2] Section

---

1. "Person" is defined in § 1–101(p) of the Tax–General Article as including "any partnership, firm, association, corporation, or other entity."

2. Section 13–302 of the Tax–General Article states as follows:
   "**§ 13–302. Determination and enforcement.**
   (a) *In general.*—To determine whether a tax return is correct or otherwise to enforce a provision of this article, a tax collector may:
   (1) examine any records or other data that may be relevant or material to the matters required to be included in a tax return;
   (2) conduct an investigation;
   (3) hold a hearing;
   (4) administer oaths;
   (5) take testimony and other evidence; and
   (6) subpoena;
       (i) any person; or
       (ii) any relevant document.
   (a–1) *Determination using scientific random sampling techniques.*—If the Comptroller determines that the taxpayer's records are so detailed, complex, or voluminous that an audit of all detailed records would be unreasonable or impractical, the Comptroller may compute the sales and use tax by using scientific random sampling techniques.

11–504 requires a vendor to keep records of retail sales and to permit inspection of the records by the Comptroller.[3] Thus, instead of seeking a declaratory judgment and injunction requiring payment of the taxes, the Comptroller could have brought an enforcement action in the Circuit Court against the defendants pursuant to § 13–302. The Comptroller, however, did not pursue this remedy.

In addition, § 13–303 authorizes the Comptroller to demand the filing of a sales and use tax return.[4] If the demand is not complied with, §§ 13–304 and 13–402 grant to the Comptroller alternate remedies. Section 13–304 authorizes a judicial action to require the filing of a return.[5] Section 13–402(a)

---

(b) *Enforcement.*—If a person fails to comply with a subpoena or fails to testify on any matter on which the person lawfully may be interrogated, on petition of a tax collector, a circuit court or, if the subpoena is issued under authority of an orphans' court, the orphans' court may pass an order directing compliance with the subpoena or compelling testimony.''

**3.** Section 11–504 provides in part as follows:
   "**§ 11–504. Records.**
   (a) *In general.*—A vendor shall keep:
   (1) complete and accurate records of:
      (i) all retail sales and sales for use; and
      (ii) the sales and use tax collected; and
   (2) other records in the form that the Comptroller requires by regulation, including bills of lading and invoices.
   (b) *Inspection.*—A vendor shall make the records under subsection (a) of this section available for inspection and examination by the Comptroller at any time during business hours.''
                              \*    \*    \*

**4.** Section 13–303 states in pertinent part:
   "**§ 13–303. Notice and demand for return.**
   If a person or governmental unit fails to file a tax return as required under this article, the tax collector shall mail the person or governmental unit a notice and demand for the return that requires the person or governmental unit:
   (1) for the sales and use tax, to file the return and to pay the tax within 10 days after the date on which the notice is mailed....''

**5.** Section 13–304 provides as follows:
   "**§ 13–304. Compelling filing of returns.**
   If a person fails to comply with a notice and demand for a return the tax collector:
   (1) may compel the person to make the return; and

authorizes the Comptroller to make an assessment utilizing the best information the Comptroller has, whatever it may be.[6] Again, the Comptroller failed to utilize either of these remedies.[7]

Once the Comptroller invokes one or more of the above-described remedies and makes an assessment, § 13–508 provides for an "informal hearing" before the Comptroller or the Comptroller's designee and a final decision by the Comptroller. Section 13–510 authorizes an appeal to the Tax Court from the Comptroller's final decision, and § 13–520 grants full subpoena power to the Tax Court. Section 13–532 provides for judicial review in the circuit courts of final decisions by the Tax Court.

When the question of exhausting administrative remedies was raised at oral argument before this Court, counsel for the Comptroller argued that the usual exhaustion requirement did not apply because the Tax Court was not authorized to decide constitutional issues.[8] Counsel's statement was in error. As we recently reiterated in *Montgomery County v. Broadcast Equities, supra,* 360 Md. at 451 n. 8, 758 A.2d at

---

6. Section 13-402(a) provides in pertinent part:
   "**§ 13–402. Assessment when tax return not filed.**
   (a) *In general.*—If a notice and demand for a return is made under § 13–303 of this title and the person or governmental unit fails to file the return, the tax collector shall:
   (1) except as otherwise provided in this section:
   (i) compute the tax by using the best information in the possession of the tax collector; and
   (ii) assess the tax due. . . . "

7. Section 11–601(c) contains yet another alternative. If the vendor fails to collect and pay the sales or use tax due, the Comptroller may proceed against the buyer.

8. Despite its name, the Tax Court is not a court; instead, it is an adjudicatory administrative agency in the executive branch of state government. *Kim v. Comptroller,* 350 Md. 527, 534, 714 A.2d 176, 179 (1998); *Shell Oil Co. v. Supervisor,* 276 Md. 36, 43–47, 343 A.2d 521, 525–528 (1975).

1002 n. 8, "[u]nder Maryland law, administrative agencies are fully competent to resolve issues of constitutionality and the validity of statutes or ordinances in adjudicatory administrative proceedings which are subject to judicial review." *See also, e.g., Josephson v. Annapolis, supra,* 353 Md. at 677, 728 A.2d at 694–695; *Holiday Point Marina v. Anne Arundel County, supra,* 349 Md. at 199–200, 707 A.2d at 834, and cases there cited. The presence of constitutional issues does not authorize a party to circumvent the statutorily prescribed administrative remedies. *Montgomery County v. Broadcast Equities, supra,* 360 Md. at 450–462, 758 A.2d at 1001–1008. This principle applies to the Comptroller as well as private parties.

· *JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY VACATED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO DISMISS THE ACTION. COSTS TO BE PAID BY THE COMPTROLLER.*