855 A.2d 351

MARYLAND RECLAMATION ASSOCIATES, INC.

v.

HARFORD COUNTY, MARYLAND, et al.

No. 105, Sept. Term, 2003.

Court of Appeals of Maryland.

July 30, 2004.

William D. Hooper, Jr. (Hooper and Jacobs, L.L.C., Bel Air, James P. Nolan, Council, Baradel, Kosmerl & Nolan, P.A., Annapolis, on brief), for appellant.

Sherrilyn Ifill (University of Maryland School of Law, Baltimore, Jennifer M. Schwartzott, Miles & Stockbridge, P.C., Baltimore, on brief), for appellees.

Nancy Levy Giorno, Deputy Cty. Atty. (Harford Cty. Dept. of Law of Bel Air, on brief), for appellees.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, GREENE, ELDRIDGE, JOHN C. (retired, specially assigned), JJ.

HARRELL, J.

The present case is the latest in a sequence of litigation between the parties beginning in 1990. As a consequence of the immediately preceding decision in that sequence, *Maryland Reclamation Associates, Inc. v. Harford County*, 342 Md. 476, 677 A.2d 567 (1996), Appellant, Maryland Reclamation Associates, Inc. ("MRA"), asked the Harford County Zoning Administrator ("the Zoning Administrator") for certain interpretations of the Harford County zoning ordinance, and particularly a 1991 amendment, as it may apply to a proposed rubble landfill on property owned by MRA. MRA also sought a zoning certificate. Following a lengthy gestation period, the Zoning Administrator, in a 22 February 1999 letter, essentially ruled that the 1991 amendment applied to MRA's proposal and also denied the zoning certificate application. The result of the Zoning Administrator's decisions was that MRA, as far as Harford County was concerned, could not establish its proposed rubble landfill on its property unless it obtained variances from the requirements of the zoning ordinance, as amended in 1991.

MRA filed an administrative appeal from the Zoning Administrator's rulings to the Harford County Board of Appeals ("the Board of Appeals").[1] On 11 June 2002, the Board of Appeals affirmed the decisions of the Zoning Administrator. Ten days later, MRA sought judicial review of the Board of

---

1. The County Council of Harford County sits also as the Harford County Board of Appeals. The different names given the same group of individuals discriminate between the exercise of different governmental functions. The Board of Appeals makes discrete administrative decisions in contested cases, and the County Council performs the general legislative functions of the legislative branch of the Harford County charter form of home rule government.

Appeals's decision in the Circuit Court for Harford County. The Circuit Court affirmed the decision of the Board of Appeals on 22 October 2003. MRA appealed to the Court of Special Appeals. We, on our initiative and before the appeal was briefed or argued in the Court of Special Appeals, issued a writ of certiorari principally to determine whether the Circuit Court, in view of the appellate history of the underlying matter, properly affirmed the Board of Appeals. *Maryland Reclamation v. Harford County*, 379 Md. 98, 839 A.2d 741 (2004).[2]

---

**2.** In our writ of certiorari, we directed certain issues to be briefed and argued:

ORDERED that in addition to the issues listed in the Court of Special Appeals Pre–Hearing Information Reports, the Court requests that the parties, in their briefs and oral arguments, address the following issues:
1. Whether Maryland Reclamation Associates, Inc.'s action in the Circuit Court, insofar as it was based on Maryland law, including Maryland constitutional law, should have been dismissed for failure to exhaust administrative remedies;
2. Whether Maryland Reclamation Associates, Inc.'s action in the Circuit Court, insofar as it was based on federal law and the federal constitution, was ripe for judicial determination.

"In connection with these issues, *see Maryland Reclamation v. Harford County*, 342 Md. 476, 490–506, 677 A.2d 567, 574–82 (1996) [*MRA II*]...."

*See* Rule 8–131(b); *Robinson v. Bunch*, 367 Md. 432, 439–41, 788 A.2d 636, 641–42 (2002).

As to the ripeness question, we included it because, in *MRA II*, MRA had advanced arguments based on the Fourteenth Amendment to the United States Constitution, Article 24 of the Maryland Declaration of Rights, and Maryland nonconstitutional law. With respect to its federal constitutional arguments, Maryland Reclamation invoked the Civil Rights Act of 1871, 42 U.S.C. § 1983. As to those arguments, we pointed out that a plaintiff is entitled to maintain an action under 42 U.S.C. § 1983 without having exhausted administrative remedies. Nonetheless, we held that, under the principles set forth in *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the federal constitutional arguments were "not ripe for judicial decision." *MRA II*, 342 Md.505, 677 A.2d 582.

In the present litigation, MRA, in its petition filed in the Circuit Court, did not include a count under, or file a separate complaint under, or otherwise invoke 42 U.S.C. § 1983. The defendants in the action were Harford County and individuals opposing the construction and operation of the rubble landfill. Because 42 U.S.C. § 1983 is not the exclusive route for obtaining resolution of federal constitutional

MRA presents the following nine questions for our consideration:

I. Has MRA exhausted its administrative remedies such that its claims of error based upon State law including preemption, estoppel, vested rights, non-conforming use and constitutional violations can be heard by this Court?

II. Are the federal issues raised by MRA as grounds for its assertion that Bill 91–10 can not be applied to MRA's proposed rubble landfill ripe for review by this Court?

III. Is Harford County preempted by State Law including the comprehensive regulatory scheme set forth in the Environmental Article of the Maryland Annotated Code and regulations adopted in support thereof, from applying Bill 91–10 to MRA's property on Gravel Hill Road given that Bill 91–10 was enacted and purportedly applied to MRA's property after Harford County zoning and Solid Waste Management Plan approvals had been given to MRA's rubble landfill application during Phase 1 of the State rubble landfill permit application process?

IV. Is Harford County prevented by the United States and/or Maryland Constitutions and/or the Maryland Declaration of Rights from applying Bill 91–10 to MRA's proposed rubble landfill on its property given that MRA had a vested right in its County zoning approval to proceed with Phases 2 and 3 the MDE's rubble landfill permitting process without Harford County being permitted to rescind its prior zoning approval and thereby veto the MDE's permit application process?

---

issues *see,* e.g., *Montgomery County v. Broadcast Equities,* 360 Md. 438, 451 and n. 8, 758 A.2d 995, 1002 and n. 8 (2000) (it is appropriate for federal and state constitutional issues to be raised and decided in State administrate and judicial review proceedings), we, from an abundance of caution in light of the prior litigation history of this dispute, included the ripeness question in our writ.

V. Is Harford County estopped from applying the provisions of Harford County Bill 91–10 to MRA's proposed operation of a rubble landfill on its property pursuant to its State-issued permit given that MRA purchased its property in justifiable reliance on Harford County's zoning and Solid Waste Management Plan approvals during Phase 1 of the State's rubble landfill permitting process, Harford County arbitrarily and unreasonably applied Bill 91–10 to MRA's proposed rubble landfill after MDE's Phase 1 permit review was complete, and MRA suffered substantial damages by being prevented from using its property for a rubble landfill by Harford County's application of Bill 91–10 to MRA's property?

VI. Will MRA's operation of a rubble landfill on its property at Gravel Hill Road pursuant to its State-issued Refuse Disposal Permit No. 92–12–35–10–D and as renewed by Refuse Disposal Permit 1996–WRF–0517 violate applicable Harford County zoning given that Harford County granted zoning and Solid Waste Management Plan approval to MRA's proposed rubble landfill during Phase 1 of the State rubble landfill permit application process?

VII. Will MRA's continued operation of a rubble landfill on its property pursuant to its State-issued permit constitute a valid non-conforming use pursuant to Harford County Zoning Code, Section 267–18 of the Harford County Zoning Code?

VIII. Did Harford County properly fail to issue MRA's grading permit due to the passage and application of Bill 91–10 to MRA's property, which grading permit issuance is a condition of MRA's Solid Waste Management Plan approval, even though all applicable County review agencies, including zoning, approved the grading permit application before the enactment of Bill 91–10?

IX. Did the Hearing Examiner properly rule that MRA is not entitled to rely upon its 1989 County Site Plan approval which pre-dated the enactment of Bill 91–10 given that this issue was not raised by MRA in a Request for Interpretation and was not ruled upon or mentioned by the Zoning Administrator but was raised sua sponte by the Hearing Examiner?

We hold that MRA was required to exhaust its administrative remedies prior to the Circuit Court considering its petition for judicial review in this matter. MRA failed to do so because it has not sought variances from the Board of Appeals. Therefore, we shall vacate the Circuit Court's order and remand with directions that consideration of the Petition for Judicial Review be stayed. Accordingly, we need, and shall, not address at this time the other questions raised by MRA.

## I.

The present case is the third reported opinion from Maryland's appellate courts addressing the parties' dispute. The factual history was summarized extensively in *Holmes v. Maryland Reclamation Associates, Inc.*, 90 Md.App. 120, 600 A.2d 864, *cert. dismissed sub nom.*, *County Council v. Maryland Reclamation*, 328 Md. 229, 614 A.2d 78 (1992) (*MRA I* ), and *Maryland Reclamation Associates, Inc. v. Harford County*, 342 Md. 476, 677 A.2d 567 (1996) (*MRA II* ). We need recount here only a brief portion of that history.

In 1989, MRA began the arduous process of seeking governmental approvals to operate a rubble landfill on its Gravel Hill Road property in Harford County. Late in 1989, Harford County included MRA's Gravel Hill Road property as a rubble landfill site in the County's Solid Waste Management Plan.[3] In

---

3. The State Legislature delegates to local county governments, in the first instance, the responsibility to plan facilities for solid waste disposal. Md.Code (1957, 1996 Repl.Vol., 2003 Supp.), § 9–503 of the Environment Article. The Code of Maryland Regulations details the counties' responsibilities. Each county must adopt and maintain a

1990, after an electoral turnover at the top rungs of the Harford County local government, Resolution 4–90 was introduced in the "new" County Council providing for the removal of MRA's property from the County's Solid Waste Management Plan. In the litigation that ensued over the passage of this resolution, the Court of Special Appeals held that Resolution 4–90 was invalid because it was preempted by the State's authority to regulate solid waste management plans and the issuance of rubble landfill permits. *MRA I*, 90 Md.App. at 157, 600 A.2d at 882.

During the pendency of the litigation in *MRA I*, Bill 91–10 was introduced in the County Council. Bill 91–10 proposed to change the spatial zoning requirements for a rubble landfill, as a permitted use, by increasing the minimum number of acres required and changing the buffer, setback, and relative topographic elevation requirements. Bill 91–10, as enacted, became effective on 27 March 1991, and is now codified as section 267–40.1 of the Harford County Code. The Gravel Hill Road property could not conform strictly to many, if not all, of the requirements added or changed by Bill 91–10. MRA filed a complaint in the Circuit Court against Harford County challenging the enactment and application of Bill 91–10 and seeking declaratory and injunctive relief. In *MRA II*, the upshot of the initial litigation over the enactment of Bill 91–10, we held that, because MRA had not exhausted its administrative remedies, the issue of the application of Bill 91–10 to the Gravel Hill Road property was not ripe for judicial determination. *MRA II*, 342 Md. at 497, 677 A.2d at 578.

In *MRA II*, we explained that "there clearly were administrative remedies [then] available to Maryland Reclamation,"

"[Section] 267.7B(5) of the Harford County Code authorizes the Zoning Administrator to render decisions on the applicability of zoning regulations to particular property under the factual circumstances presented, and § 267–7E of the Code authorizes an appeal from his decision to the

comprehensive Solid Waste Management Plan, using a ten year horizon. COMAR 26.03.03.02(A).

Board of Appeals. Maryland Reclamation could have sought a ruling by the Zoning Administrator under that section and could have prosecuted an appeal from any adverse ruling, but it failed to do so. Even if it be assumed, *arguendo*, that the May 2, 1991, letter from the Director of Planning was such a decision under § 267.7B(5), Maryland Reclamation failed to pursue its appeal to the Board of Appeals.

"Moreover, if it was determined that Bill 91–10, or any other Harford County zoning regulation, precluded Maryland Reclamation from proceeding with a rubble landfill on its property, the landowner could have applied for a variance under §§ 267–9 D and 267–11 of the Harford County Code, and could have appealed any adverse decision to the Board of Appeals.

"In addition to the provisions of the Harford County Code, state law vests jurisdiction in the Harford County Board of Appeals over '[a]n application for a zoning variance or exception....' Code (1957, 1994 Repl.Vol.), Art. 25A, § 5(U). Furthermore, under Maryland law, the Harford County Board of Appeals would be authorized and required to consider any of the constitutional and other issues raised by Maryland Reclamation to the extent that those issues would be pertinent in the particular proceedings before the Board."

*MRA II*, 342 Md. at 490–92, 677 A.2d at 574–75 (citations and footnote omitted).

Following our decision in *MRA II*, MRA presented its first request for interpretation to the Zoning Administrator on 15 November 1996. Four questions were presented:

1. Does Bill 91–10 apply to MRA's property on Gravel Hill Road?

2. Can the requirements of Bill 91–10 be validly applied to MRA's property on Gravel Hill road under the circumstances of this case and in light of the Environmental Article of the Maryland Code as well as other principles of law?

3. Will operation of a rubble landfill by MRA on its property at Gravel Hill Road pursuant to its State permit be deemed to violate applicable Harford County Code Sections 267–40.1, 267.28C, 267–28D(4) and 267.41?

4. Can MRA obtain the grading permit (No. 92–123) for which it has already applied and paid for and which has not yet been issued, without meeting the current requirements of Harford County Zoning Law?

The Zoning Administrator responded to the 15 November 1996 request for interpretation with a letter dated, 18 February 1997, simply stating that Bill 91–10 was applicable to MRA's proposed rubble landfill. On 7 March 1997, MRA appealed the Zoning Administrator's decision to the Board of Appeals. MRA advanced various constitutional, preemption, estoppel, and non-conforming use bases for finding the Zoning Administrator's decision incorrect.

MRA filed with the Zoning Administrator on 10 December 1998 a second request for interpretation of the zoning ordinance. Pursuant to § 267–8 of the Harford County Code, MRA also applied on 29 December 1998 for a zoning certificate to construct and operate its desired rubble landfill.[4] In the second request for interpretation, MRA asked the Zoning Administrator to answer five more questions related to the ability of the County to apply the requirements of Bill 91–10 to MRA's Gravel Hill Road property.

The five questions presented were:

5. Whether MRA's operation of a rubble landfill on its property at Gravel Hill Road pursuant to the State-issued Refuse Disposal Permit No. 92–12–35–10 D and

---

4. Section 267–8(A) of the Harford County Code makes it "unlawful for any owner, tenant, licensee or occupant to initiate development of, change the use of or commence a use of any lot or structure, except agricultural uses or structures, in whole or part, without first obtaining a zoning certificate issued by the Zoning Administrator." An approved and duly issued zoning certificate indicates that the proposed use of the building or premises are in conformity with Harford County Zoning laws. Harford County Code § 267–8(B).

as renewed by Refuse Disposal Permit 1996–WRF–0517 will be deemed to violate applicable Harford County zoning?

6. Whether Harford County is prohibited by the principles of estoppel from applying the provisions of Harford County Bill 91–10 (Section 267–40.1 of the Harford County Code) to MRA's operation of a rubble landfill on its property pursuant to its state-issued permit referenced in question 1?

7. Whether applying the provisions of Bill 91–10 to MRA's property and, specifically, the MRA's operation of a rubble landfill on its property, is prohibited by the United States Constitution and/or the Maryland Declaration of Rights?

8. Whether Harford County is preempted by the Environmental Article of the Maryland Annotated Code, including but not limited to Sections 9–201 et seq. and 9–501 et seq. and applicable regulations promulgated thereto from applying the provisions of Bill 91–10 to MRA's property and specifically, to MRA's operation of a rubble landfill on its property pursuant to its State-issued permit referenced in question 1?

9. Whether MRA's operation of a rubble landfill on its property pursuant to its State-issued permit referenced in question 1 is a valid non-conforming use pursuant to the Harford County Zoning Code?

In a 22 February 1999 letter denying MRA's request for a zoning certificate, the Zoning Administrator also answered MRA's questions five and nine, but declined to answer its questions six, seven, and eight. After a remand from the Board of Appeals to the Zoning Administrator, questions six, seven, and eight were answered in a 4 October 2000 letter. After consolidating MRA's two appeals, the Board of Appeals, by delegation to its Zoning Hearing Examiner, heard the matters on various days over the course of January to October 2001.

The Zoning Hearing Examiner issued on 2 April 2002 an extensive written decision affirming the decisions of the Zoning Administrator. According to the Hearing Examiner, the weight of the evidence showed that the application of Bill 91–10 to the proposed rubble landfill did not violate federal, state, or local laws. Specifically, the Zoning Hearing Examiner's answers to MRA's nine questions may be summarized as follows:

1. Bill 91–10 applies to MRA's property on Gravel Hill Road.

2. The requirements of Bill 91–10 can be validly applied to MRA's property on Gravel Hill road under the circumstances of this case and in light of the Environmental Article of the Maryland Code as well as other principles of Maryland law.

3. MRA's operation of a rubble landfill on its property at Gravel Hill Road pursuant to its state permit will violate applicable Harford County Zoning law, particularly Harford County Code §§ 267–40.1, 267–28C, 267–28D(4) and 267–41. Moreover, the Hearing Examiner questions whether the permit issued to MRA by MDE is validly issued as it was based on misinformation provided to the State by MRA regarding the conformance of the property and use with Harford County Zoning law.

4. MRA cannot obtain a grading permit unless it can meet the requirements of Harford County Zoning law. To the extent MRA does not meet specific standards it must seek a variance and obtain a variance from provisions with which it cannot comply. MRA's reliance on site plan approvals that pre-date the enactment of Bill 91–10 is without merit.

5. MRA's operation of a rubble landfill on its property at Gravel Hill Road pursuant to its State-issued Refuse Disposal Permit No. 91–12–35–10–D and as renewed by Refuse Disposal Permit 1996–WRF–0517 will violate applicable Harford County zoning law.

6. Harford County is not prohibited by the principles of estoppel from applying the provisions of Harford County Bill 91–10 (section 267–40.1 of the Harford County Code) to MRA's property and specifically, to MRA's operation of a rubble landfill on its property.

7. MRA's rubble landfill did not acquire vested rights in its use that would insulate it from the application of Bill 91–10 to that use. It is the vested rights doctrine itself that allows a landowner to raises issues of constitutional protections. There is no constitutional infringement on the rights of MRA because a vested right was not established. Applying the provisions of Bill 91–10 to MRA's Gravel Hill Road property is, therefore, not prohibited by the United State's Constitution and/or the Maryland Declaration of Rights.

8. Harford County is not preempted by the Environmental Article of the Maryland Code, particularly sections 9–201 et seq. and 9–501 et seq, from applying Bill 91–10 to MRA's Gravel Hill Road property.

9. MRA's operation of a rubble landfill on its Gravel Hill Road property is not a valid non-conforming use pursuant to Harford County Zoning Code.

On 11 June 2002, the County Council, sitting as the Board of Appeals, adopted the Zoning Hearing Examiner's decision. Harford County, therefore, refused to issue to MRA a grading permit or zoning certificate for the proposed rubble landfill because of the strictures of Bill 91–10. Neither in response to the Board of Appeals's final decision, nor on a parallel course to its requests for interpretation or a zoning certificate, did MRA seek variances for relief from the requirements of Bill 91–10.

On 21 June 2002, MRA commenced the current phase of the litigation by petitioning the Circuit Court for Harford County for judicial review of the Board of Appeals's decision. The Circuit Court affirmed the decision of the Board of Appeals on 22 October 2003. It concluded that "all nine requests for interpretation were answered correctly [by the Zoning Admin-

istrator, Zoning Hearing Examiner, and Board of Appeals], in accordance with the law, and based on substantial evidence, and the decision was also correct when it upheld the zoning administrator's denial of Maryland Reclamations request for a zoning certificate."

Regrettably, because MRA still has not exhausted its available administrative remedies, as explained in *MRA II*, we shall vacate the Circuit Court's judgment and remand with directions to stay final action on the petition for judicial review. Before it may prosecute its petition for judicial review in this matter, MRA must apply for the zoning variances assertedly needed to obtain relief from Bill 91–10. When final administrative action is taken on variance applications, MRA, if still aggrieved, may seek additional judicial review of Harford County's actions on the variances and prosecute the present matter. Failure to prosecute variance applications within a reasonable time could result in dismissal of the present petition.

## II.

### A.

■ A fundamental precept of administrative law is the requirement that exclusive or primary administrative remedies ordinarily be exhausted before bringing an action in court.[5] *See, e.g., Brown v. Fire and Police Employees' Retire-*

---

**5.** We have recognized a few limited exceptions to the requirement that administrative remedies be exhausted, but none apply here. *See Moose v. Fraternal Order of Police,* 369 Md. 476, 489, 800 A.2d 790, 798 (2002). One exception to the exhaustion requirement arises in some actions challenging the facial validity of a statute. *See Comm'n on Human Relations v. Mass Transit,* 294 Md. 225, 232, 449 A.2d 385, 388 (1982). The requirement also may not apply when the Legislature expresses an intent that the administrative remedy need not be invoked and exhausted. *See Mass Transit,* 294 Md. at 232 n. 4, 449 A.2d at 388 n. 4. We have also recognized that exhaustion of administrative remedies may not be required when an agency is palpably without jurisdiction. *See Comm'n on Human Relations v. Freedom Express/Domegold, Inc.,* 375 Md. 2, 825 A.2d 354 (2003); *SEFAC Lift & Equipment Corp. v. Mass Transit,* 367 Md. 374, 382, 788 A.2d 192, 197 (2002).

*ment System,* 375 Md. 661, 669, 826 A.2d 525, 530 (2003); *Dorsey v. Bethel A.M.E. Church,* 375 Md. 59, 76, 825 A.2d 388, 397–98 (2003); *Moose v. Fraternal Order of Police,* 369 Md. 476, 492–93, 800 A.2d 790, 801 (2002); *Furnitureland v. Comptroller,* 364 Md. 126, 133, 771 A.2d 1061, 1065 (2001) ("[W]here the Legislature has provided an administrative remedy for a particular matter or matters, there is a presumption that the Legislature intended such remedy to be primary and intended that the administrative remedy must be . . . exhausted before resort to the courts"); *Montgomery County v. Broadcast Equities,* 360 Md. 438, 461, 758 A.2d 995, 1008 (2000) ("[T]he normal rule [is] that primary administrative . . . remedies must be exhausted."); *Josephson v. City of Annapolis,* 353 Md. 667, 674–78, 728 A.2d 690, 693–95 (1998) (when administrative remedies exist in zoning cases, they must be exhausted before other actions, including requests for declaratory judgments, mandamus, and injunctive relief, may be brought); *Holiday Point Marina Partners v. Anne Arundel County,* 349 Md. 190, 201, 707 A.2d 829, 834–35 (1998); *Zappone v. Liberty Life Ins.,* 349 Md. 45, 60–66, 706 A.2d 1060, 1067–70 (1998); *MRA II,* 342 Md. at 492–97, 677 A.2d at 575–76, and cases there cited. Moreover, pursuant to the Uniform Declaratory Judgment Act, "[i]f a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu" of a declaratory action proceeding. Md.Code (1973, 2002 Repl.Vol., 2003 Supp.), § 3–409(b) of the Courts and Judicial Proceedings Article.

In *Soley v. State Commission on Human Relations,* 277 Md. 521, 526, 356 A.2d 254, 257 (1976), we observed as follows:

> The rule requiring exhaustion of administrative or statutory remedies is supported by sound reasoning. The decisions of an administrative agency are often of a discretionary nature, and frequently require an expertise which the agency can bring to bear in sifting the information presented to it. The agency should be afforded the initial opportunity to exercise that discretion and to apply that expertise. Furthermore, to permit interruption for purposes of judicial intervention at various stages of the administrative process might well

undermine the very efficiency which the Legislature intended to achieve in the first instance. Lastly, the courts might be called upon to decide issues which perhaps would never arise if the prescribed administrative remedies were followed.

■ Eight years ago in *MRA II,* this Court instructed MRA that before it may obtain judicial review in the Circuit Court for Harford County of any adverse administrative decisions in this case, it must exhaust its available administrative remedies under the applicable laws. *MRA II,* 342 Md. at 497, 677 A.2d at 578. In *MRA II,* this Court identified the administrative remedies available to MRA: (1) request an interpretive ruling from the Zoning Administrator and, if that ruling were adverse to MRA's interests, appeal to the Board of Appeals; (2) if the Board of Appeals's decision was adverse to MRA, it should apply for zoning variances or exceptions. *MRA II,* 342 Md. at 501, 677 A.2d at 580. We hold with regard to the present action that because MRA failed to apply for, and receive final administrative action on, zoning variances before returning again to the courts, it exhausted only the first of these two administrative remedies; therefore, the Circuit Court for Harford County should not have decided MRA's petition for judicial review on its merits at the time it did.

MRA argues that the proper application to its situation of the exhaustion of administrative remedies principle should permit a "two-step process" by which it may pursue in turn judicial review of each discrete adverse administrative decision. MRA believes that this Court must decide the issues it advances in the present case and, if decided adversely to MRA's position, it retains "the option of seeking a variance from the application of Bill 91–10 and other Harford County regulations to its property." We do not subscribe to this inefficient and piecemeal approach. Seeking zoning variances is not, as MRA contends, merely an "option." The right to request zoning interpretations and a zoning certificate and, if denied, the right to seek variances are two parallel or successive remedies to be exhausted, not optional selections on an a

la carte menu of administrative entrees from which MRA may select as it pleases. *See Dorsey,* 375 Md. at 75, 825 A.2d at 397. Once both administrative remedies are pursued to completion, MRA, if still feeling itself aggrieved, may pursue judicial review of the County agencies' adverse actions.

■ A party aggrieved by a decision of a local zoning official, such as the Zoning Administrator, must exhaust available exclusive or primary administrative remedies before pursuing judicial review in the circuit court. Md.Code (1957, 1998 Repl.Vol., 2003 Supp.), Art. 25A § 5(U) (setting forth the jurisdiction and procedural requirements with respect to boards of appeal in chartered counties).[6]

---

**6.** Harford County has chosen the charter form of local home rule under the Maryland Express Powers Act and, therefore, is subject to Article 25A § 5(U) of the Express Powers Act. *See Klein v. Colonial Pipeline Co.,* 285 Md. 76, 78, 400 A.2d 768, 769 (1979).

Whether the administrative remedies provided in Article 25A, § 5(U) are exclusive, as they clearly were prior to 1999 *see Holiday Point Marina Partners v. Anne Arundel County,* 349 Md. 190, 201, 707 A.2d 829, 834 (1998), or primary, is open to debate. Prior to 1 October 1999, the final sentence of Art. 25A, § 5(U), stated: "The review proceedings provided by this subsection shall be exclusive." This sentence appears to have been the basis for our holdings that the administrative-judicial review remedies under § 5(U) were exclusive. Thus, in *Holiday v. Anne Arundel,* 349 Md. 190, 202–203, 707 A.2d 829, 834, 835–836 (1998), we explained:

"The General Assembly in Art. 25A, § 5(U), has expressly stated that the administrative and judicial review remedy applicable to the present case is 'exclusive.' The effect of such language is to abrogate any alternative legal or equitable remedies that might otherwise have existed. As explained in numerous cases, where the administrative and judicial review procedures are exclusive, neither a declaratory judgment action nor a common law or equitable action will lie. *See Zappone v. Liberty Life Insurance Co.,* 349 Md. 45, 706 A.2d 1060 (1998); *Bowman v. Goad,* 348 Md. 199, 703 A.2d 144 (1997); *Insurance Commissioner v. Equitable, supra,* 339 Md. at 623, 664 A.2d at 876; *Moats v. City of Hagerstown,* 324 Md. 519, 529, 597 A.2d 972, 977 (1991); *Muhl v. Magan,* 313 Md. 462, 480–481, 545 A.2d 1321, 1330 (1988); *Nordheimer v. Montgomery County,* 307 Md. 85, 96–98, 512 A.2d 379, 384–386 (1986); *Potomac Elec. Power v. Prince George's County,* 298 Md. 185, 189–191, 468 A.2d 325, 327 (1983); *Apostol v. Anne Arundel County,* 288 Md. 667, 672–673, 421 A.2d 582, 585–586 (1980); *White v. Prince George's Co.,* 282 Md. 641, 649–653, 387 A.2d 260, 265–267 (1978)."

Judge Eldridge, speaking for this Court, pellucidly explained the doctrine of exhaustion of administrative remedies, as applied to the circumstances of this dispute, in *MRA II*. As MRA appears not to have appreciated completely the directions of *MRA II*, we can only reiterate the reasoning here. In *MRA II*, we had to determine whether MRA was "required to invoke and exhaust administrative remedies available under the Harford County Code and the Express Powers Act, Maryland Code (1957, 1994 Repl.Vol.), Art. 25A, § 5(U)." *MRA II*, 342 Md. at 490, 677 A.2d at 574. If MRA were so required and had not sought to utilize those remedies, i.e., invoking

---

The General Assembly, however, by Ch. 651 of the Acts of 1999, effective 1 October 1999, amended Art. 25A, § 5(U), so as to repeal the final sentence of the subsection containing the exclusivity language. While a preamble to Ch. 651 indicates that the legislative purpose was to authorize appeals to courts in banc, in lieu of appeals to the Court of Special Appeals, the actual amendment to the statute was more sweeping. It repealed the language which had made the administrative and circuit court judicial review proceedings exclusive. Consequently, since 1 October 1999, the remedies under Art. 25A, § 5(U), may no longer be exclusive.

Even if the remedies under Art. 25A, § 5(U), may no longer be exclusive, they are certainly primary. Nothing in the language or history of Ch. 651 of the Acts of 1999 suggests that the Legislature intended to permit circumvention of the *administrative* remedies set forth in Art. 25A, § 5(U). The legislative purpose in deleting the last sentence of § 5(U), and making the remedies non-exclusive, was to allow alternative *judicial appellate* remedies. Neither the language of Ch. 651 nor its history support the view that the *administrative* remedies under § 5(U) may be by-passed. As this Court has emphasized on numerous occasions, while "there is no presumption that [an] administrative remedy was intended [by the Legislature] to be exclusive," there is, "however a presumption that the administrative remedy is intended to be primary, and that a claimant cannot maintain [a] judicial action without first invoking and exhausting the administrative remedy." *Zappone v. Liberty Life*, 349 Md. 45, 63, 706 A.2d 1060, 1069 (1998). *See, e.g., Dorsey v. Bethel A.M.E.*, 375 Md. 59, 76, 825 A.2d 388, 397–398 (2003), quoting *Furnitureland v. Comptroller, supra*, 364 Md. at 133, 771 A.2d at 1065 ("[W]here the Legislature has provided an administrative remedy for a particular matter or matters, there is a presumption that the Legislature intended such remedy to be primary and intended that the administrative remedy must be ... exhausted before resort to the courts"); *Montgomery County v. Broadcast Equities, supra*, 360 Md. at 461, 758 A.2d at 1008 ("[T]he normal rule [is] that primary administrative ... remedies must be exhausted"); *Josephson v. Annapolis*, 353 Md. 667, 674–678, 728 A.2d 690, 693–695 (1998).

administrative action and then seeking judicial review of the administrative agency action, we stated that "there would be no occasion for the Court to reach the merits of such issue." *Id.* This Court concluded that "[t]here clearly were administrative remedies available to Maryland Reclamation, affording . . . the means for obtaining the relief sought if it was entitled to such relief." *Id.* We explained:

> When the legislative body expressly states that the administrative remedy is primary or exclusive or must be exhausted, the mandatory nature of the exhaustion requirement is underscored. Such express language is totally inconsistent with the notion that the administrative agency's jurisdiction over the matter can be circumvented.

*MRA II*, 342 Md. at 493, 677 A.2d at 576 (citation and formatting omitted). What we stated in *MRA II* continues to apply to MRA's latest attempt to skirt for now the remaining, available administrative process.

We stated in *Dorsey v. Bethel A.M.E. Church* that "the requirement that administrative remedies must be exhausted before bringing an action to court . . . overlaps the finality principle." *Dorsey*, 375 Md. at 76, 825 A.2d at 397. A common purpose behind both doctrines is the avoidance of "piecemeal actions in the Circuit Court seeking fragmented advisory opinions." *Dorsey*, 375 Md. at 75, 825 A.2d at 397 (quoting *Driggs Corp. v. Maryland Aviation Admin.*, 348 Md. 389, 407, 704 A.2d 433, 442 (1998)). MRA's present effort illustrates, in a negative sense, the sound policy behind the requirement of exhaustion of administrative remedies.

## B.

MRA's failure to exhaust administrative remedies, before bringing this judicial review action, applies to the federal constitutional issues as well as the state constitutional and nonconstitutional issues. MRA might file a 42 U.S.C. § 1983 claim prior to exhausting administrative variance remedies. Our order granting certiorari specifically raised the issue. For the reasons extensively discussed in *MRA II, supra*, 342

Md. at 497–506, 677 A.2d at 578–82, we hold that the federal constitutional issues raised by Maryland Reclamation also are not now ripe for judicial decision.

### C.

 Under the circumstances, a stay by the Circuit Court of final consideration on the merits of this petition for judicial review is the correct disposition for the present, rather than dismissal of the petition. When a litigant is entitled to bring two separate legal proceedings in an effort to obtain relief in a particular matter, when the litigant institutes the first of those proceedings and the case is pending in a trial court, and when the trial court is unable to decide the merits of that case because of primary jurisdiction or exhaustion principles associated with the second proceeding, the trial court ordinarily should stay the first proceeding for a reasonable period of time. During that period, the litigant may pursue and obtain a final administrative decision in the second proceeding. If still aggrieved, the litigant will be able to file an action for judicial review in the second proceeding, and the trial court may hear the two cases together. If the litigant, within a reasonable period of time, fails to pursue the second proceeding, the court should then dismiss the first proceeding. *See, e.g., State v. State Bd. of Contract Appeals,* 364 Md. 446, 458, 773 A.2d 504, 511 (2001); *McCullough v. Wittner,* 314 Md. 602, 613, 552 A.2d 881, 886 (1989); *Maryland–National Capital Park & Planning Comm'n v. Crawford,* 307 Md. 1, 18, 511 A.2d 1079, 1087–88 (1986); *Bd. of Ed. for Dorchester Co. v. Hubbard,* 305 Md. 774, 792–93, 506 A.2d 625, 634 (1986); *Offutt v. Montgomery Co. Bd. of Ed.,* 285 Md. 557, 562, 404 A.2d 281, 284 (1979).

A decision very much on point is *United States v. Michigan National Corp.,* 419 U.S. 1, 95 S.Ct. 10, 42 L.Ed.2d 1 (1974). In that case, a Michigan bank holding company owned several national banks and desired to acquire four additional Michigan banks. The circumstances of the proposed transaction brought it within two separate federal regulatory statutes, each providing for a separate administrative proceeding before

federal government agencies. One federal statute required that the acquisition of the additional banks be approved by the Federal Reserve Board, and a different federal statute required that the acquisition be approved by the Comptroller of the Currency. Each statute provided for judicial review of final administrative decisions approving the acquisition, by authorizing an objector to file an action under § 7 of the Clayton Act, 15 U.S.C. § 18, within 30 days of the administrative approvals.

The Michigan bank holding company filed the appropriate applications with both the Federal Reserve Board and the Comptroller of the Currency. The Federal Reserve Board approved the acquisition in October 1973. The Government (presumably the Department of Justice's anti-trust division) opposed the acquisition and filed in the United States District Court for the Eastern District of Michigan an action, within the prescribed 30–day period, challenging the Federal Reserve Board's decision and seeking to enjoin the acquisition. The Comptroller of the Currency, however, had not rendered an administrative decision when the judicial action was filed. The United States District Court dismissed the Government's suit, holding that it was premature and that a decision by the Comptroller of the Currency in the other administrative proceeding might give the Government the relief which it sought and thus would moot the judicial action.

The Supreme Court in *Michigan National Corp.* reversed, holding that the District Court's dismissal was error. The Supreme Court, however, did not hold that the District Court should have decided the merits of the judicial action. Instead, the Supreme Court held that the District Court should have stayed the action before it pending an administrative decision by the Comptroller of the Currency. The Court pointed out that this "procedure has generally been followed when the resolution of a claim cognizable in a federal court must await a determination by an administrative agency having primary jurisdiction." *United States v. Michigan Nat'l Corp., supra,* 419 U.S. at 4–5, 95 S.Ct. at 12, 42 L.Ed.2d at 1, citing

numerous cases. The Court continued (419 U.S. at 5–6, 95 S.Ct. at 12, 42 L.Ed.2d at 1, footnote omitted):

"In the present case we cannot say with assurance that the Government will not be prejudiced by a dismissal. * * * By the time the Comptroller approves the mergers, the 30–day period following Board approval may have long since expired. By waiting for approval of the Comptroller before filing its lawsuit, the Government runs the risk that complete relief will be barred. . . ."

The Supreme Court concluded (419 U.S. at 6, 95 S.Ct. at 12, 42 L.Ed.2d at 1):

"Where suit is brought after the first administrative decision and stayed until remaining administrative proceedings have concluded, judicial resources are conserved and both parties fully protected."

Other cases in the Supreme Court and in other jurisdictions also support a stay, rather than a dismissal, under circumstances similar to those in the case at bar. *See, e.g., Ricci v. Chicago Mercantile,* 409 U.S. 289, 302, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973) ("[G]iven administrative authority to examine the . . . dispute in the light of the regulatory scheme and . . . rules, the [judicial] action should be stayed until the administrative officials have had opportunity to act"); *Carnation Co. v. Pacific Conference,* 383 U.S. 213, 223, 86 S.Ct. 781, 787, 15 L.Ed.2d 709 (1966) (The judicial "action . . . cannot be easily reinstituted at a later time. Such claims are subject to the Statute of Limitations and are likely to be barred by the time the Commission acts. Therefore, we believe that the Court of Appeals should have stayed the action instead of dismissing it"); *Thompson v. Texas Mexican Ry. Co.,* 328 U.S. 134, 151, 66 S.Ct. 937, 947, 90 L.Ed. 1132 (1946) ("[T]he case [should] be held pending the conclusion of appropriate administrative proceedings"); *General American Tank Car Corp. v. El Dorado Terminal Co.,* 308 U.S. 422, 433, 60 S.Ct. 325, 331, 84 L.Ed. 361 (1940) ("There should not be a dismissal, but, . . . the cause should be held pending the conclusion of an appropriate administrative proceeding"); *Hansen v. Norfolk &*

*Western Ry. Co.*, 689 F.2d 707, 714 (7th Cir.1982) ("Because the primary jurisdiction doctrine is designed to govern timing of judicial consideration, and not to allocate ultimate powers between courts and agencies, ... a stay of court proceedings is often more consonant with the doctrine than a dismissal of a complaint"); *Hoffburg v. Alexander*, 615 F.2d 633, 642 (5th Cir.1980); *Concordia v. United States Postal Service*, 581 F.2d 439, 444 (5th Cir.1978).

**JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY VACATED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO STAY APPELLANT'S PETITION FOR JUDICIAL REVIEW CONSISTENT WITH THIS OPINION. APPELLANT TO PAY COSTS.**