773 A.2d 504

**STATE of Maryland, et al.**

v.

**MARYLAND STATE BOARD OF CONTRACT APPEALS and Law Offices of Peter G. Angelos, P.C.**

**No. 98, Sept. Term, 2000.**

Court of Appeals of Maryland.

June 7, 2001.

Reconsideration Denied July 11, 2001.

See also, 349 Md. 660, 709 A.2d 1230.

448

Ralph S. Tyler (Douglas R.M. Nazarian of Hogan & Hartson L.L.P.; J. Joseph Curran, Jr., Atty. Gen. of Maryland, Maureem M. Dove and Randolph Stuart Sergent, Asst. Attys. Gen., on brief), Baltimore, for petitioners-cross respondents.

William F. Gately (H. Thomas Howell of Howell & Gately, on brief), Baltimore, for respondents-cross petitioners.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

ELDRIDGE, Judge.

This case is a sequel to *Philip Morris Inc. v. Glendening,* 349 Md. 660, 709 A.2d 1230 (1998), in which this Court upheld the authority of the Attorney General of Maryland to enter into a contingent fee contract with the Law Offices of Peter G. Angelos, P.C., for the purpose of representing the State in

litigation against the tobacco industry. The present appeal involves a dispute over legal fees and expenses following the settlement of the tobacco litigation. The primary question decided by the trial court and debated by the parties on appeal is whether the Attorney General's authority to hire private legal counsel is subject to Maryland's general procurement law, Maryland Code (1988, 1995 Repl.Vol.), §§ 11–101 *et seq.* of the State Finance and Procurement Article.[1] For reasons set forth later in this opinion, we shall not reach this question.

## I.

In 1996, with the approval of the Governor and the Board of Public Works, the Attorney General entered into a contingent fee contract with the Firm to "provide legal counsel, representation, and litigation services to the Attorney General and the State of Maryland in connection with the litigation against the tobacco industry." The contract provides for the Firm to be paid a fee of 25% of the State's recovered funds in addition to reasonable expenses incurred.

· The State's litigation against the tobacco industry eventually settled in November 1998. The form of that settlement was a "Master Settlement Agreement" that disposed of the claims of the states that had sued the tobacco industry. The settlement agreement created a mechanism for private counsel to be paid their fees from the tobacco industry. The Attorney General requested that the Firm initially seek its fee under the settlement agreement's reimbursement mechanism. The Firm, however, submitted three separate contract claims to the Attorney General. Each claim asserted that the Firm is entitled to 25% of the State's estimated $4.4 billion recovery from the settlement. The Attorney General denied the Firm's contract claims. The Attorney General also concluded that the contract at issue is not a procurement contract and thus is

---

1. The State and the Attorney General will hereafter sometimes be referred to collectively as "the State." The Law Offices of Peter G. Angelos will be referred to as "the Firm."

not subject to the jurisdiction of the Maryland State Board of Contract Appeals. The Firm administratively appealed the Attorney General's denials by filing a complaint with the Board of Contract Appeals. That action is still pending before the Board.

On December 8, 1999, before any action by the Board and after the denials of the Firm's contract claims, the State and the Attorney General filed a complaint in the Circuit Court for Baltimore City against the Firm. The State alleged that the Firm breached its contractual and fiduciary duties by failing to seek an award of its legal fees and expenses directly from the tobacco industry. The complaint sought declaratory and injunctive relief including a declaration that the Firm's 25% contingent fee is unreasonable, excessive, and in violation of Rule 1.5 of the Maryland Rules of Professional Conduct.[2] The Firm denied that the State was entitled to relief and filed a two count counterclaim seeking, *inter alia*, specific performance of the contract. The case proceeded through discovery, and the parties filed cross-motions for summary judgment.

The Attorney General also filed a motion with the Board of Contract Appeals to dismiss the Firm's appeal to the Board on the ground that the Board lacked subject matter jurisdiction over the disputed contract. The Attorney General argued that Maryland's general procurement law does not apply to the Attorney General's authority to hire outside counsel.[3]

---

2. Even though injunctive relief was also sought, this action will hereafter be referred to simply as the declaratory judgment action.

3. The General Procurement Law is codified at Code, Division II, Titles 11 through 17 of the State Finance and Procurement Article. Section 11–202 sets forth the scope of the procurement law, providing:

 "§ 11–202. Scope of Division—In General:
 Except as otherwise expressly provided by law, this Division II applies to:
 (1) each expenditure by a unit under a procurement contract;
 (2) each procurement by a unit on behalf of another unit, governmental agency, or other entity; and
 (3) each procurement by a unit, even if a resulting procurement contract will involve no expenditure by the State and will produce

Instead, the Attorney General argued, the employment of private counsel is governed solely by the provisions of Code (1984, 1999 Repl.Vol.), § 6–105 of the State Government Article.[4] The Board denied the Attorney General's motion to dismiss in a written opinion in which the Board determined that the Firm "is an independent contractor whose Contract is covered by the General Procurement Law and thus subject to the dispute resolution jurisdiction of this Board" pursuant to

revenue for the State, for services that are to be provided for the benefit of:

 (i) State officials, State employees, or students at a State facility, including a school, hospital, institution, or recreational facility;

 (ii) clients or patients at a State hospital or State institution;

 (iii) the public at a State recreational facility; or

 (iv) the public at a State transportation facility or State higher education facility, as required by the Board."

4. Section 6–105 states:

 "§ **6–105. Staff.**

 (a) *General employment.*—(1) The Attorney General may employ a staff in accordance with the State budget.

 (2) Staff members appointed under this subdivision:

 (i) are deemed special appointments within the meaning of § 6–405 of the State Personnel and Pensions Article; and

 (ii) services at the pleasure of the Attorney General.

 (3) (i) Staff appointed under this subsection is entitled to compensation as provided in the State budget.

 (ii) Unless the State budget provides otherwise, the salary of a Deputy Attorney General, assistant Attorney General, or special attorney appointed under this subsection is payable from the funds of the Office.

 (4) Staff is entitled to reimbursement for expenses under the Standard State Travel Regulations, as provided in the State budget.

 (b) *Special employment.*—(1) In addition to any other staff appointed under this section, the Attorney General, with the written approval of the Governor, may employ any assistant counsel that the Attorney General considers necessary to carry out any duty of the Office in an extraordinary or unforeseen case or in special county work.

 (2) The Attorney General shall submit to the Governor a written request that:

 (i) states the necessity of and each reason for the special employment; and

 (ii) states the proposed compensation and its source or certifies that the Attorney General cannot ascertain in advance the proper compensation.

 (3) Compensation that cannot be ascertained in advance may be agreed on or adjusted later."

§ 15–211 of the State Finance and Procurement Article.[5]

After the Board's interlocutory decision that it had jurisdiction, the Attorney General filed a petition for a writ of certiorari in the Circuit Court for Baltimore City challenging the Board's assertion of jurisdiction over the contract dispute. The Firm intervened in that case and filed a motion to dismiss the petition, arguing, *inter alia,* that the Board had jurisdiction.

In a written memorandum opinion and order, the Circuit Court held that the contract between the Attorney General and the Firm is a procurement contract pursuant to the general procurement law and that, therefore, the Board of Contract Appeals has primary jurisdiction to resolve the dispute. Because of its conclusion that the Board has jurisdiction over the dispute, the Circuit Court declined to issue a writ of certiorari. Accordingly, the court entered a final judgment in the certiorari action for the Board of Contract Appeals and the Firm and against the Attorney General. The Circuit Court simultaneously dismissed, without prejudice, the declaratory judgment action filed by the Attorney General and the State against the Firm.

The State filed notices of appeal in both the declaratory judgment action and in the certiorari action, and the Firm

---

**5.** Title 15, Subtitle 2 of the State Finance and Procurement Article creates the Maryland State Board of Contract Appeals, establishes the Board's jurisdiction, and provides procedures for the resolution of contract disputes. Section 15–211 provides:

"**15–211. Jurisdiction; finality of decisions.**

(a) *Jurisdiction.*—The Appeals Board shall have jurisdiction to hear and decide all appeals arising from the final action of a unit:

(1) on a protest relating to the formation of a procurement contract; or

(2) except for a contract claim relating to a lease of real property, on a contract claim concerning:

(i) breach;

(ii) performance;

(iii) modification; or

(iv) termination.

(b) *Finality of decisions.*—A decision of the Appeals Board is final, subject to any judicial review."

filed a notice of cross-appeal in the declaratory judgment case. Prior to any proceedings in the Court of Special Appeals, the State filed in this Court a petition for a writ of certiorari seeking review of the Circuit Court's decisions in both cases, and we granted the petition. *State et al. v. Maryland State Board of Contract Appeals and Law Offices of Peter G. Angelos, P.C.,* 361 Md. 433, 761 A.2d 932 (2000). The State presents two questions for review, which we re-state as follows:

1. Is the contract for legal representation that the Attorney General entered into with the Law Offices of Peter G. Angelos, P.C., pursuant to Maryland Code, § 6–105 of the State Government Article, subject to the State procurement law, §§ 11–101 *et seq.,* of the State Finance and Procurement Article, such that the Maryland State Board of Contract Appeals has jurisdiction over disputes under that contract?

2. Did the Circuit Court err in dismissing, without prejudice, the State's action against the Firm for declaratory and injunctive relief on the ground that the Board of Contract Appeals and not the Circuit Court has jurisdiction over the parties' fee dispute?

Additionally, the Firm asks us to consider whether the State lacks standing to bring the declaratory judgment action because, according to the Firm, the Board of Public Works effectively transferred or disposed of the State's interest in the 25% share of the settlement pursuant to the Board's authority under § 10–305 of the State Finance and Procurement Article, thereby extinguishing any claim by the State.[6]

## II.

We shall first address the certiorari action filed in the Circuit Court. Recently, in *Board of License Commissioners v. Corridor Wine,* 361 Md. 403, 761 A.2d 916 (2000),

---

**6.** The Firm argues that this is the correct basis for dismissal of the declaratory judgment action. This question was raised by a motion for summary judgment but was not decided by the Circuit Court.

this Court reviewed the three distinct uses of a writ of certiorari under current Maryland practice. We stated (361 Md. at 410–412, 761 A.2d at 920):

> "*First,* pursuant to statute, the writ is issued by the Court of Appeals in the exercise of the Court's appellate jurisdiction. *See* Code (1974, 1998 Repl.Vol.), §§ 12–201 through 12–203 and 12–305 of the Courts and Judicial Proceedings Article."

> "*Second,* when there is no statutory provision for judicial review of final adjudicatory decisions by administrative agencies, either a certiorari or a mandamus action in the appropriate circuit court is normally available for ordinary 'substantial evidence' judicial review of the adjudicatory administrative decisions."

* * *

> "*Third,* 'it has long been the common law rule in Maryland that a circuit court has jurisdiction to issue a writ of certiorari to a lower court for the purpose of inquiring into that tribunal's jurisdiction.' *Kawamura v. State,* 299 Md. 276, 283, 473 A.2d 438, 442 (1984)."

The second use of a writ of certiorari applies only where there is no statutory authorization for judicial review. With regard to the case at bar, § 15–223 of the State Finance and Procurement Article authorizes any party, including a unit of state government, to bring a circuit court action for judicial review of a final decision of the Board of Contract Appeals. The third use of a writ of certiorari is for the purpose of examining the jurisdiction of an inferior tribunal, even in the absence of a final decision by that tribunal. The Attorney General's certiorari action purportedly fell within this third category. The Attorney General sought a circuit court determination of the Board's jurisdiction even though there was no final decision by the Board.

The certiorari action brought by the Attorney General, challenging the Board of Contract Appeals' jurisdiction over the contract dispute, does not lie under the circumstances of this case. In *Corridor Wine, supra,* we held that a circuit

court's authority to issue a writ of certiorari to an inferior tribunal, for the purpose of inquiring into that tribunal's jurisdiction over a case pending before the tribunal, does not apply to an action pending before an administrative agency in the executive branch of state government or local government. Administrative agencies like the Board of Contract Appeals, we explained, are not inferior tribunals in relation to the circuit courts; rather they are independent units of the executive branch of state government. *See* § 15–206 of the State Finance and Procurement Article. *See also Shell Oil Co. v. Supervisor,* 276 Md. 36, 44–47, 343 A.2d 521, 525–527 (1975) (administrative agencies are not courts of limited jurisdiction and are generally not within the judicial branch of government). Furthermore, circuit courts do not exercise appellate or oversight jurisdiction in regard to such administrative agencies. Oversight of state administrative agencies is generally vested in the executive branch of government.

■ Therefore, the authority of a circuit court to issue a writ of certiorari to determine whether an inferior tribunal has jurisdiction over a matter pending before that tribunal is limited to matters pending before the District Court of Maryland or one of the orphans' courts. The Circuit Court for Baltimore City was not authorized to review, by certiorari, the interlocutory jurisdiction decision of the Board of Contract Appeals. The court should have declined to issue the writ of certiorari on this ground.

### III.

### A.

■ The State, in its appeal from the dismissal of the declaratory judgment action, argues that a contract entered into by the Attorney General for outside legal services is not a procurement contract and thus is not within the jurisdiction of the Board of Contract Appeals. The State contends that the Circuit Court erred in holding that the contract was a procurement contract and in holding that the Board of Contract Appeals had jurisdiction over the matter. In our view, howev-

er, the more appropriate question is whether, under all of the circumstances, the parties are entitled to a judicial decision concerning the nature of the contract prior to a final decision by the Board of Contract Appeals.

 Where an administrative agency has primary or exclusive jurisdiction over a controversy, the parties to the controversy must ordinarily await a final administrative decision before resorting to the courts for resolution of the controversy. *Board of License Commissioners v. Corridor Wine, supra,* 361 Md. at 418, 761 A.2d at 924, and cases there cited. *See also Furnitureland South, Inc. v. Comptroller,* 364 Md. 126, 771 A.2d 1061 (2001). Furthermore, in *Driggs Corp. v. Md. Aviation,* 348 Md. 389, 406–408, 704 A.2d 433, 442–443 (1998), we held that the Board of Contract Appeals has either primary or exclusive jurisdiction over government contract matters encompassed by § 15–211 of the State Finance and Procurement Article and that, consequently, any judicial resolution of the matter, before a final decision by the Board of Contract Appeals, would be premature.[7]

The State argues, however, that where the administrative agency has no jurisdiction over a controversy, the parties need not wait for a final administrative decision but are entitled to an immediate judicial resolution of the matter. In situations where a controversy or matter is pending before an adjudicatory administrative agency, we have assumed, without deciding, that a party need not await a final administrative decision

---

7. *See University of Md. v. MFE,* 345 Md. 86, 691 A.2d 676 (1997), where Judge Wilner for the Court reviewed in detail the legislative history of the state procurement law. The Court there pointed out that in preliminary drafts the proposed general procurement law would have authorized a claimant to by-pass the administrative remedy and file an action in a circuit court. The administrative procedure finally enacted by the Legislature, however, dropped the concurrent judicial remedy in favor of the dispute resolution process culminating with a final decision by the Board of Contract Appeals. *See also Maryland State Police v. Warwick,* 330 Md. 474, 624 A.2d 1238 (1993); *Department of General Services v. Harmans Associates Limited Partnership,* 98 Md.App. 535, 541, 633 A.2d 939, 942–943 (1993); *McLean Contracting Company v. Maryland Transportation Authority,* 70 Md.App. 514, 525, 521 A.2d 1251, 1256 (1987).

where the administrative " 'agency is palpably without juris-diction.' "' *Comm'n On Human Relations v. Mass Transit,* 294 Md. 225, 235, 449 A.2d 385, 390 (1982), quoting Davis, *Administrative Law Treatise,* Ch. 20, § 20.01 at 56 (1958). *See Board of License Commissioners v. Corridor Wine, supra,* 361 Md. at 418, 761 A.2d at 924; *Montgomery County v. Ward,* 331 Md. 521, 527, 629 A.2d 619, 622 (1993).

Regardless of how the "procurement contract" issue is ultimately resolved, it is obvious that the Board of Contract Appeals is not "palpably without jurisdiction." The contract at issue is a government contract for the procurement of legal services to be rendered to the State of Maryland. It was submitted by the Attorney General to the Board of Public Works for approval by that Board. *See* § 12–101 *et seq.* of the State Finance and Procurement Article. While it may or may not technically be a "procurement contract" within the mean-ing of the state procurement law, the issue is obviously a reasonably debatable one. As the agency charged with mak-ing final administrative adjudications under the procurement law, the Board of Contract Appeals' determination of the issue, embodied in a final decision by the Board, would be helpful prior to a judicial resolution of the issue. This is clearly not a situation where the Board of Contract Appeals is "palpably without jurisdiction." [8]

Accordingly, the Circuit Court erred in deciding that the contract was a "procurement contract" and in dismissing the declaratory judgment action on this ground. Instead, the Circuit Court should have refrained from reaching the issue at this stage, and should have stayed the declaratory judgment action pending a final decision by the Board of Contract Appeals. *See, e.g., McCullough v. Wittner,* 314 Md. 602, 613, 552 A.2d 881, 886 (1989); *Md.-Nat'l Cap. P. & P. Comm'n v. Crawford,* 307 Md. 1, 18, 511 A.2d 1079, 1087–1088 (1986); *Bd. of Ed. for Dorchester Co. v. Hubbard,* 305 Md. 774, 792–793,

---

8. For an example of a tribunal being "palpably without jurisdiction," see the discussion in *Parker v. State,* 337 Md. 271, 282–283, 653 A.2d 436, 441–442 (1995).

506 A.2d 625, 634 (1986); *Offutt v. Montgomery Co. Bd. of Ed.,* 285 Md. 557, 562, 404 A.2d 281, 284 (1979).

### B.

■ We now turn to the Firm's cross-appeal. Essentially, the Firm contends that the Board of Public Works' authority to transfer or dispose of State property effectively extinguished the State's right or interest in the 25% share of the funds recovered from the tobacco industry. The Firm relies on the language in § 10–305(a)(1) of the State Finance and Procurement Article which provides that "[a]ny real or personal property of the State or unit of the State government may be sold, leased, transferred, exchanged, granted or otherwise disposed of" to "any person ... for a consideration the Board decides is adequate." In other words, the Firm argues that, when it entered into the contingent fee contract with the Attorney General, a property right was immediately vested on its behalf in 25% of any funds which might be recovered.

■ The Firm's argument is completely without merit. We know of no case which stands for the proposition that, upon entering a contingent fee contract, the contract creates an immediate property right in the possible future fee. Rather, a contingent fee contract between an attorney and client, providing for a fee to be paid based on the recovered damages, is simply a contract and as such gives rise to a breach of contract action. *See, e.g., Post v. Bregman,* 349 Md. 142, 707 A.2d 806 (1998).

*IN THE CERTIORARI ACTION, THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY IS AFFIRMED. IN THE DECLARATORY JUDGMENT ACTION, THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY IS VACATED AND THE CASE IS REMANDED TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE STATE OF MARYLAND.*