975 A.2d 894

**LAUREL RACING ASSOCIATION, INC.**

v.

**VIDEO LOTTERY FACILITY LOCATION COMMISSION, et al.**

**No. 159, Sept. Term, 2008.**

Court of Appeals of Maryland.

July 20, 2009.

446

Michael D. Berman (Alan M. Rifkin, M. Celeste Bruce, and L. Teri Spradlin–Dahn of Rifkin, Livingston, Levitan and Silver, LLC of Annapolis, MD), on brief, for Appellant/Cross–Appellee.

Austin C. Schlick, Assistant Attorney General (Douglas F. Gansler, Attorney General of Maryland, and Robert T. Fontaine, Dan Friedman, and Bonnie Kirkland, Assistant Attorneys General, and Sarah Rice, Baltimore, MD), all on brief, for Appellees/Cross–Appellants.

Argued Before: BELL, C.J., and HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and ELDRIDGE, JOHN C. (Retired, Specially Assigned) JJ.

ELDRIDGE, J.

The parties in this case have presented statutory interpretation and constitutional issues arising under the recently enacted Maryland legislation authorizing a limited number of "video lottery terminals," in "video lottery facilities," at five Maryland locations.[1] We shall not, however, be able to reach the issues debated by the parties. Under the relevant statutes, jurisdiction lies with the State Board of Contract Appeals. The Circuit Court should not have exercised jurisdiction in this matter until the statutorily prescribed administrative remedy had been exhausted and a final decision rendered by the Board of Contract Appeals.

---

1. In common parlance, "video lottery terminals" are usually referred to as "slot machines."

## I.

Article XIX of the Maryland Constitution, entitled "Video Lottery Terminals," was proposed by Ch. 5 of the 2007 Special Session of the General Assembly, and was ratified by Maryland voters at the general election held on November 4, 2008. Article XIX provides, *inter alia,* that the State may issue up to five video lottery operation licenses throughout the State, that the State may not authorize more than 15,000 video lottery terminals in the State, and that "a video lottery operation license only may be awarded for a video lottery facility in" five specified locations. One of the five specified locations is "Anne Arundel County, within 2 miles of MD Route 295...." The constitutional amendment also provides that "the State may not award more than one video lottery operation license in a single county or Baltimore City." Finally, the constitutional provision mandates that "[a] video lottery facility shall comply with all applicable planning and zoning laws of the local jurisdiction." [2]

---

**2.** Article XIX of the Maryland Constitution provides in pertinent part as follows:

"**Section 1. Video lottery terminals.**
\* \* \*

(c)(1) Except as provided in subsection (e) of this section, the State may issue up to five video lottery operation licenses throughout the State for the primary purpose of raising revenue
\* \* \*

(2) Except as provided in subsection (e) of this section, the State may not authorize the operation of more than 15,000 video lottery terminals in the State.

(3) Except as provided in subsection (e) of this section, a video lottery operation license only may be awarded for a video lottery facility in the following locations:

(i) Anne Arundel County, within 2 miles of MD Route 295;

(ii) Cecil County, within 2 miles of Interstate 95;

(iii) Worcester County, within 1 mile of the intersection of Route 50 and Route 589;

(iv) On State property located within Rocky Gap State Park in Allegany County; or

(v) Baltimore City
\* \* \*

(4) Except as provided in subsection (e) of this section, the State may not award more than one video lottery operation license in a single county or Baltimore City.

In addition to proposing Article XIX of the Maryland Constitution, the General Assembly enacted Ch. 4 of the 2007 Special Session. This statute implemented the constitutional amendment and was contingent upon voter ratification of the constitutional amendment. Since the constitutional amendment was ratified by the voters, Ch. 4 became operative. Ch. 4 both added new provisions and amended existing provisions in several Articles of the Maryland Code. The new provisions, which are pertinent in the case at bar, are codified in Maryland Code (1984, 2004 Repl.Vol., 2008 Supp.), Title 9, Subtitle 1A, §§ 9–1A–01 through 9–1A–36, of the State Government Article.[3]

Section 9–1A–36 (a) through (f) of the State Government Article establishes the "Video Lottery Facility Location Commission" (hereafter sometimes referred to as the "Location Commission" or the "Commission") consisting of seven members. The section prescribes the method of appointment and the qualifications for members of the Location Commission, provides for the expenses and staff of the Commission, and authorizes the Commission to award not more than five video lottery operation licenses through a competitive bidding process. Section 9–1A–36 (f) through (i) reflects the limitations set forth in the constitutional amendment as well as more detail concerning the bidding process for video lottery operation licenses, the locations of video lottery facilities, and the maximum number of video lottery terminals at each of the five locations.

-----

(5) A video lottery facility shall comply with all applicable planning and zoning laws of the local jurisdiction.

(d) Except as provided in subsection (e) of this section, on or after November 15, 2008, the General Assembly may not authorize any additional forms or expansion of commercial gaming.

(e) The General Assembly may only authorize additional forms or expansion of commercial gaming if approval is granted through a referendum, authorized by an act of the General Assembly, in a general election by a majority of the qualified voters in the State."

**3.** Unless otherwise specified, statutory references in this opinion shall be to the State Government Article of the Maryland Code.

With respect to Anne Arundel County, § 9–1A–36 (h)(1)(i) and (i)(1)(i) authorize the Video Lottery Facility Location Commission to award a maximum of 4,750 video lottery terminals at a single location in Anne Arundel County within 2 miles of MD Route 295.

Section 9–1A–36 (i)(3)(i) and (r) of the State Government Article sets forth a termination date for the Video Lottery Facility Location Commission and provides that, under certain circumstances after the Location Commission's termination, the State Lottery Commission "may allocate or reallocate video lottery terminals" to licensees. Section 9–1A–36 (k) enumerates various factors which should be considered by the Location Commission in awarding a license. Section 9–1A–36 (n) provides that, "[a]fter award of a video lottery operation license under this section, the State Lottery Commission shall be responsible for all matters relating to regulation of the licensee."

The provision which is most pertinent to the statutory interpretation and constitutional arguments by the parties in this case is § 9–1A–36 (j) of the State Government Article which states as follows:

"(j) *Bids and initial fees.*—(1) A bid submitted for a video lottery operation license at a video lottery destination location under this section shall be submitted by February 1, 2009, and shall include an initial license fee in the bid of at least $3,000,000 for each 500 video lottery terminals included in the bid.

(2) All initial license fees submitted under this subtitle shall accrue to the Education Trust Fund established under § 9–1A–30 of this subtitle.

(3) A bid submitted for a video lottery operation license under this section shall provide for at least $25,000,000 in direct investment by the applicant in construction and related costs for each 500 video lottery terminals contained in the proposed bid that shall be prorated based on the exact number of video lottery terminals contained in the bid."

Section 9–1A–30 of the State Government Article, referred to in paragraph (2) of the above-quoted subsection, establishes the Education Trust Fund, consisting of certain revenues anticipated under the Video Lottery Terminals program, provides that money in the Education Trust Fund "shall be invested and reinvested" by the State Treasurer, delineates the education programs for which the funds should be used, and states in § 9–1A–30 (d) that "[e]xpenditures from the Education Trust Fund shall be made each fiscal year in accordance with the State budget."

Finally, § 9–1A–36 (o) of the State Government Article sets forth the only statutory remedy, contained in Chs. 4 and 5 of the 2007 Special Session, which is granted to an unsuccessful bidder for a video lottery license. Subsection (o) states as follows:

> "(o) *Review of bid process.*—An unsuccessful bidder for a video lottery operation license under this section may seek, under Title 15 of the State Finance and Procurement Article, review by the State Board of Contract Appeals of the awarding of the video lottery operation license by the Video Lottery Facility Location Commission."

Under Title 15 of the State Finance and Procurement Article, in § 15–223(a), a final administrative decision, rendered by the State Board of Contract Appeals, "is subject to judicial review in accordance with Title 10, Subtitle 2, of the State Government Article," which is the State Administrative Procedure Act.

## II.

The facts in this case are undisputed. On December 19, 2008, the Video Lottery Facility Location Commission promulgated a "Request for Proposals for Video Lottery Operation Licenses," and set February 2, 2009, as the deadline for the submission of bids.[4] Section 3.10 of the Request for Proposals

---

4. Although § 9–1A–36 (j)(1) of the State Government Article provided that a bid for a video lottery operation license "shall be submitted by

was entitled "License and Application Fees," and stated in § 3.10.1 as follows:

## "3.10.1 Initial License Fee

A proposal submitted for an Operation License at a Video Lottery Facility Location shall include an Initial License Fee with the proposal of at least $3,000,000 for each 500 Video Lottery Terminals included in the proposal, that shall be prorated based on the exact number of VLTs [Video Lottery Terminals] contained in the proposal. The Initial License Fee shall be in the form of a certified check payable to the 'State of Maryland/State Lottery Agency' or a wire/electronic transfer and will be deposited by the Location Commission into a bank account of the State."

The Request for Proposals further provided:

## "3.10.1.2 Disposition—Refund to Unsuccessful Applicant

The Initial License Fee will be refunded to an unsuccessful Applicant, provided that Applicant has properly fulfilled all requirements of the RFP [Request for Proposals] process and paid all License fees, within forty-five (45) days after the award of a License to another Applicant, unless Applicant challenges the award of the License as stated in Section 3.2.3. Any interest earned thereon will be retained by the State."

Reflecting § 9–1A–36 (*o*) of the State Government Article, the Request for Proposals prescribed the recourse available to unsuccessful applicants:

"3.2.3 An unsuccessful Applicant for a Video Lottery Operation License may seek, under Title 15 of the State Finance and Procurement Article, review by the State Board of Contract Appeals of the awarding of the Video Lottery Operation License by the Location Commission."

During January 2009, the Location Commission responded to several questions posed by potential applicants for licenses.

---

February 1, 2009," that date fell on a Sunday, and therefore the deadline was February 2, 2009.

The Commission's answers were sent to all persons and entities which had received a copy of the Request for Proposals. With regard to the submission of the initial license fee, the Commission stated, and reiterated numerous times, that the initial license fee "must be paid in a single total payment" with the application for a license.

The Location Commission also answered questions relating to a possible refund of the initial license fee to unsuccessful applicants. In particular, the following question was posed and answered as follows:

"*QUESTION:* If an Applicant is awarded a license and then cannot get zoning for the property through no fault of the Applicant, will the Initial License Fee be refunded?

"*ANSWER:* The Location Commission may consider such requests under extraordinary circumstances, in the Location Commission's discretion."

According to the Location Commission, the plaintiff-appellant Laurel Racing Association did not, prior to February 2, 2009, ask for any explanation of this answer or otherwise question the Location Commission regarding the criteria or standards used to determine if a refund of the initial license fee would be available.

On February 2, 2009, Laurel Racing Association submitted to the Location Commission an application for a video lottery operation license for the Anne Arundel County location. Although § 9–1A–36 (j)(1) required that the applicant "shall include an initial license fee in the bid of at least $3,000,000 for each 500 video lottery terminals included in the bid," Laurel Racing Association's submission did not include the $28.5 million dollar initial license fee for the 4,750 terminals requested. Except for the absence of the initial license fee, Laurel Racing Association's application complied with the statute and the Request for Proposals.

Laurel Racing Association's bid included the following statement explaining the absence of the initial license fee:

"Applicant is not able to provide an Initial License Fee at this time due to market conditions. Applicant will endeavor

to provide the Initial License Fee on or before its supplemental filing on April 15, 2009."

After February 2, 2009, representatives of Laurel Racing Association contacted the Location Commission's "Procurement Officer" on several occasions to request direction on how to submit the initial license fee. The Procurement Officer's response was that the deadline had passed.

At about 10:00 A.M. on February 12, 2009, the Video Lottery Facility Location Commission unanimously rejected Laurel Racing Association's bid on the ground that the Association had failed to submit the initial license fee. Also on February 12, 2009, Laurel Racing Association instituted the present action by filing in the Circuit Court for Anne Arundel County a complaint against the Video Lottery Facility Location Commission and the Maryland State Lottery Commission, seeking a declaratory judgment and injunctive relief.[5]

Laurel Racing Association, on February 18, 2009, filed a "Protest" with the Location Commission, and the Association on February 23, 2009, filed a notice of appeal to the State Board of Contract Appeals. The Association, in its notice of appeal, stated that the notice was filed in an excess of caution and to preserve its rights, but that the Association was of the view that the Board of Contract Appeals lacked jurisdiction to review the decision by the Location Commission.

The State filed in the Circuit Court a motion to dismiss this action or, alternatively, to stay the judicial action "pending completion of ongoing administrative proceedings concerning the same subject matter." [6] As a further alternative, the State filed a motion for summary judgment.

The case was submitted to the Circuit Court on a stipulation of facts, affidavits, other documents, and oral argument by each side.

---

5. Hereafter, both State Commissions will, for convenience, sometimes be referred to as the "State."

6. The record in this case does not disclose the present status of the administrative proceedings before the Board of Contract Appeals.

Laurel Racing Association argued that, under the statutory language, the initial license fees paid by unsuccessful applicants for video operation licenses were not refundable. According to the Association, § 9–1A–36 (j)(2) required that all initial license fees would become part of the Education Trust Fund, and § 9–1A–30 (d) required that any expenditures from the Education Trust Fund be made only in accordance with the State budget. Laurel Racing Association maintained that, because the initial license fee is not refundable to an unsuccessful applicant, the statute effects an unconstitutional taking of the Association's property in violation of Article III, § 40, of the Maryland Constitution. The Association also advanced other constitutional arguments, including the contention that the statute violates due process principles embodied in Article 24 of the Maryland Declaration of Rights.

The State argued that the Board of Contract Appeals had exclusive or primary jurisdiction over an unsuccessful applicant's complaints, that Laurel Racing Association should not be able to bypass the jurisdiction of the Board of Contract Appeals by bringing an action for a declaratory judgment and injunctive relief, and that the Association, before maintaining a judicial action, should be required to exhaust the administrative remedy and obtain a final administrative decision by the Board of Contract Appeals. The State alternatively argued that the Association, by failing to submit its statutory interpretation and constitutional arguments to the Location Commission on or before February 2, 2009, had waived those arguments. Turning to the merits, the State disagreed with the Association's interpretation of the statutory provisions. Moreover, the State argued that, even if the Association's interpretation were correct, there would be no violation of the Association's constitutional rights because the Association did not pay the initial license fee.

The Circuit Court rendered a written opinion which qualified as a declaratory judgment. The court initially rejected the State's argument based on the State Board of Contract Appeals' jurisdiction and exhaustion of the administrative remedy before the Board of Contract Appeals. According to

the Circuit Court, "jurisdiction of the Maryland State Board of Contract Appeals does not apply to disputes that arise prior to the awarding of the video lottery operation license." The Circuit Court seemed to be of the view that, when there is an administrative process for dealing with a disputed matter before a government unit, when the head of the government unit makes a decision adverse to the plaintiff, but when the head of the unit has not yet rendered a decision from which there is a right of appeal and an adjudicatory hearing before an independent administrative agency having exclusive or primary jurisdiction, a circuit court may entertain an action and resolve the dispute as long as the court acts prior to the time when the government unit renders a decision triggering the right to an adjudicatory hearing before the independent agency. The Circuit Court cited no authority in support of its theory.

The Circuit Court also rejected the State's waiver argument. Nonetheless, the Circuit Court agreed with the State's statutory interpretation and constitutional arguments. The court held that the "initial license fees are refundable in the event an applicant is not awarded a license." Alternatively, the court held "that even if the initial license fees were determined to be non-refundable to unsuccessful applicants," there would be no violation of Laurel Racing Association's constitutional rights. The Circuit Court denied the State's motion to dismiss and motion to stay judicial proceedings, denied the plaintiff's request for preliminary and permanent injunctions, and granted the State's motion for summary judgment.

Laurel Racing Association filed a notice of appeal and, prior to any proceedings in the Court of Special Appeals, filed in this Court a petition for a writ of certiorari. The State did not file a notice of appeal from those portions of the declaratory judgment which were adverse to the State. *See Joseph H. Munson Company v. Secretary of State*, 294 Md. 160, 167–170, 448 A.2d 935, 939–941 (1982), *affirmed*, 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984). The State also did not oppose the grant of certiorari, but, instead, filed a cross-petition for a

writ of certiorari. This Court granted both the petition and the cross-petition. *Laurel Racing v. Video Lottery*, 408 Md. 148, 968 A.2d 1064 (2009).

The parties' arguments in this Court, with one exception, are essentially the same as their arguments in the Circuit Court. The one exception is that "[t]he State Defendants do not seek review by this Court of the circuit court's denial of their motion to dismiss or stay the case under the doctrine of administrative exhaustion." (State's cross-petition for a writ of certiorari at 8, n. 4).

As pointed out in the opening paragraph of this opinion, we shall not reach any of the issues argued in this Court by the parties. Rather, the dispositive issue is the one abandoned by the State, namely whether primary or exclusive jurisdiction over the dispute lies with the Board of Contract Appeals, and whether the Laurel Racing Association was required to exhaust its administrative remedy before the Board of Contract Appeals.

### III.

### A.

■ Preliminarily, the State's abandonment of its exclusive or primary jurisdiction and exhaustion of administrative remedies argument has no effect upon this Court's obligation to consider the issue. Recently in *University System v. Mooney*, 407 Md. 390, 401, 966 A.2d 418, 424 (2009), Judge Battaglia for the Court reiterated the controlling principle:

"Although we usually will not consider an issue that has not been raised below, there is 'a limited category of issues, in addition to jurisdiction, which an appellate court ordinarily will address even though they were not raised by a party.' *Moats v. City of Hagerstown*, 324 Md. 519, 525, 597 A.2d 972, 975 (1991). One of these issues is the exhaustion of administrative remedies, which we will address when raised for the first time before us, or on our own initiative. *See Furnitureland South, Inc. v. Comptroller of Treasury of*

**458**

*State,* 364 Md. 126, 132, 771 A.2d 1061, 1065 (2001); *Montgomery County v. Broadcast Equities, Inc.,* 360 Md. 438, 450–451 & n. 7, 452, 758 A.2d 995, 1002 & n. 7, 1003 (2000); *Maryland Reclamation Associates, Inc. v. Harford County,* 342 Md. 476, 490 n. 10, 677 A.2d 567, 574 n. 10 (1996)."

In *Furnitureland South, Inc. v. Comptroller,* 364 Md. 126, 771 A.2d 1061 (2001), the State Comptroller filed in the Circuit Court for Anne Arundel County an action for a declaratory judgment, and neither the parties nor the Circuit Court at any time in the litigation raised or mentioned any issue concerning exhaustion of administrative remedies. Nevertheless, this Court vacated the Circuit Court's judgment and ordered that the case be dismissed because of the Comptroller's failure to exhaust administrative and judicial review remedies, holding as follows (364 Md. at 132, 771 A.2d at 1065):

"Although no party has raised any question regarding the invocation and exhaustion of administrative remedies, and the propriety of a declaratory judgment action, these are issues which this Court will address *sua sponte.*"

This principle of Maryland administrative law was discussed at some length in *Board of Education for Dorchester County v. Hubbard,* 305 Md. 774, 786–787, 506 A.2d 625, 631 (1986):

"Where ... the administrative remedy is deemed to be primary [or exclusive], this Court has generally held that it must be pursued and exhausted before a court exercises jurisdiction to decide the controversy. *Wash. Sub. San. Comm'n v. Mitchell & Best, supra,* 303 Md. at 553–554, 495 A.2d 260 [30]; *Md. Comm'n on Human Rel. v. B.G. & E. Co.,* 296 Md. 46, 50, 459 A.2d 205, 208 (1983); *Md. Comm'n on Human Rel. v. Beth. Steel,* 295 Md. 586, 592, 457 A.2d 1146, 1149 (1983), and cases there cited. As explained in *Sec., Dep't of Human Res. v. Wilson, supra,* 286 Md. at 645, 409 A.2d 713,

'when the Legislature enacts a comprehensive remedial scheme in which a claim is to be determined by an administrative agency and reviewed in an administrative appeal before judicial review is available, it establishes, as

public policy, that such a procedure produces the most efficient and effective results. In order to effectuate this public policy, trial courts generally should not act until there has been compliance with the statutory comprehensive remedial scheme.'

"While the failure to invoke and exhaust an administrative remedy does not ordinarily result in a trial court's being deprived of fundamental jurisdiction, nevertheless, because of the public policy involved, the matter is for some purposes treated *like* a jurisdictional question. Consequently, issues of primary jurisdiction and exhaustion of administrative remedies will be addressed by this Court sua sponte even though not raised by any party. *See, e.g., Comm'n on Human Rel. v. Mass Transit,* 294 Md. 225, 232, 449 A.2d 385 (1982); *Sec., Dep't of Human Res. v. Wilson, supra,* 286 Md. at 645, 409 A.2d 713."

### B.

As earlier discussed, the special statutory remedy for "[a]n unsuccessful bidder for a video lottery operation license under" § 9–1A–36 is "review by the State Board of Contract Appeals" pursuant to Title 15 of the State Finance and Procurement Article. *See* § 9–1A–36 (*o*) of the State Government Article. This is the only remedy set forth in the Video Lottery Terminals subtitle of the State Government Article, § § 9–1A–01 through 9–1A–36, for an unsuccessful applicant for a video lottery operation license. Moreover, in § 9–1A–02 (a) of the subtitle, the General Assembly stated, without qualification, that "[t]his subtitle is ... *exclusive in its effect.*" (Emphasis added).

Section 9–1A–36 (*o*) of the State Government Article incorporates by reference the provisions of Title 15 of the State Finance and Procurement Article relating to review by the Board of Contract Appeals, or the "Appeals Board" as the Code sometimes refers to it. *See* Maryland Code (2001, 2006 Repl.Vol.), § § 15–201 through 15–212, 15–220, 15–221, and 15–223 of the State Finance and Procurement Article. Sec-

tion 15–211(a) of the State Finance and Procurement Article provides that the "Appeals Board shall have jurisdiction to hear and decide all appeals arising from the final action of a unit" from which an appeal to the Appeals Board may be taken, and § 15–211(b) states that a "decision of the Appeals Board is final, subject to any judicial review." Sections 15–212 and 15–221 of the same Article delineate the broad authority of the Appeals Board with regard to hearings, subpoenas, the right to compel the testimony of witnesses, etc. Under § 15–223(a) of the State Finance and Procurement Article, a "decision of the Appeals Board is subject to judicial review in accordance with" the Maryland Administrative Procedure Act.

 This Court has held that the jurisdiction of the Board of Contract Appeals, under Title 15 of the Finance and Procurement Article, is primary or exclusive. Consequently, a party must exhaust the administrative remedy and obtain a final administrative decision by the Board of Contract Appeals before resorting to the courts.

An instructive case is *State of Maryland v. State Board of Contract Appeals and Law Offices of Peter G. Angelos,* 364 Md. 446, 773 A.2d 504 (2001), which also reviewed our earlier opinions involving the Board of Contract Appeals. The *Peter G. Angelos* case involved a contract between the Office of the Maryland Attorney General and a private law firm, pursuant to which the law firm represented the State of Maryland in litigation against the tobacco industry. The contract had been approved by the Governor and the Maryland Board of Public Works. After the litigation was settled, a dispute arose between the Attorney General's Office and the law firm over the amount of the fee owed by the State to the law firm. The Attorney General, on behalf of the State, rendered a final decision regarding the fee which was adverse to the law firm. The law firm then filed an appeal to the State Board of Contract Appeals. The Attorney General took the position that the contract was not a procurement contract and that, therefore, the Board of Contract Appeals had no jurisdiction.

The Attorney General in the *Peter G. Angelos* case, on behalf of the State, filed actions in the Circuit Court for Baltimore against the law firm and the Board of Contract Appeals, seeking an injunction and a declaratory judgment that the Board had no jurisdiction and resolving the fee dispute in the State's favor. The Attorney General also filed a motion with the Board of Contract Appeals to dismiss the appeal for lack of jurisdiction. The Board, in an opinion and interlocutory order, denied the motion to dismiss on the ground that it did have jurisdiction. The Circuit Court, *independently*, determined that the contract was a procurement contract and that the Board had jurisdiction. The Circuit Court entered judgment in favor of the Board and dismissed the injunction and declaratory judgment actions. Both the State, by the Attorney General, and the law firm appealed, and we granted a certiorari petition prior to proceedings in the Court of Special Appeals.

The principal issue in *Peter G. Angelos*, debated by each side in this Court, was whether or not the Circuit Court erred in holding that the contract was a procurement contract. This Court viewed the issue somewhat differently (364 Md. at 456–457, 773 A.2d at 510):

"In our view, however, the more appropriate question is whether, under all of the circumstances, the parties are entitled to a judicial decision concerning the nature of the contract prior to a final decision by the Board of Contract Appeals.

"Where an administrative agency has primary or exclusive jurisdiction over a controversy, the parties to the controversy must ordinarily await a final administrative decision before resorting to the courts for resolution of the controversy. *Board of License Commissioners v. Corridor Wine, supra,* 361 Md. at 418, 761 A.2d at 924, and cases there cited. *See also Furnitureland South, Inc. v. Comptroller,* 364 Md. 126, 771 A.2d 1061 (2001)."

We continued by reviewing earlier opinions concerning the Board of Contract Appeals (364 Md. at 457, 773 A.2d at 510–511):

"Furthermore, in *Driggs Corp. v. Md. Aviation,* 348 Md. 389, 406–408, 704 A.2d 433, 442–443 (1998), we held that the Board of Contract Appeals has either primary or exclusive jurisdiction over government contract matters encompassed by § 15–211 of the State Finance and Procurement Article and that, consequently, any judicial resolution of the matter, before a final decision by the Board of Contract Appeals, would be premature.[7]

"7 See *University of Md. v. MFE,* 345 Md. 86, 691 A.2d 676 (1997), where Judge Wilner for the Court reviewed in detail the legislative history of the state procurement law. The Court there pointed out that in preliminary drafts the proposed general procurement law would have authorized a claimant to by-pass the administrative remedy and file an action in a circuit court. The administrative procedure finally enacted by the Legislature, however, dropped the concurrent judicial remedy in favor of the dispute resolution process culminating with a final decision by the Board of Contract Appeals.* * * "

This Court in the *Angelos* case, 364 Md. at 458, 773 A.2d at 511, went on to point out that, where the jurisdiction of the adjudicatory administrative agency is an issue, a court should await a final decision by the agency before reviewing the matter unless

"the administrative 'agency is palpably without jurisdiction.' *Comm'n on Human Relations v. Mass Transit,* 294 Md. 225, 235, 449 A.2d 385, 390 (1982), quoting Davis, *Administrative Law Treatise,* Ch. 20, § 20.01 at 56 (1958) (some internal quotation marks omitted). *See Board of License Commissioners v. Corridor Wine, supra,* 361 Md. at 418, 761 A.2d at 924; *Montgomery County v. Ward,* 331 Md. 521, 527, 629 A.2d 619, 622 (1993).

"Regardless of how the 'procurement contract' issue is ultimately resolved, it is obvious that the Board of Contract Appeals is not 'palpably without jurisdiction.' The contract at issue is a government contract for the procurement of legal services to be rendered to the State of Maryland. It was submitted by the Attorney General to the Board of Public Works for approval by that Board. *See* § 12–101 *et seq.* of the State Finance and Procurement Article. While it may or may not technically be a 'procurement contract'

within the meaning of the state procurement law, the issue is obviously a reasonably debatable one. * * * "

Since the Board of Contract Appeals was not "palpably without jurisdiction," we held that the Circuit Court erred in deciding the issue regarding the nature of the contract.

Our subsequent opinions concerning the Board of Contract Appeals are to the same effect. *See University System v. Mooney, supra,* 407 Md. at 412–413, 966 A.2d at 431 (Upholding the Circuit Court's dismissal of a complaint on the ground that the remedy before the Board of Contract Appeals was primary under the circumstances of the case, and that the plaintiff had failed to exhaust the administrative remedy); *Engineering Management Services v. Maryland State Highway Administration,* 375 Md. 211, 215–216, 825 A.2d 966, 968 (2003) (Judge Harrell, reviewing the role of the Board of Contract Appeals, pointed out that "State procurement contracts are subject to an exclusive statutorily-prescribed [four part] procedure for resolving disputes," with the first part being the decision of the procurement officer, the second being the unit's head making a decision, the third an appeal to the Board of Contract Appeals, and the fourth being judicial review of the Board's decision under the Maryland Administrative Procedure Act); *SEFAC v. MTA,* 367 Md. 374, 788 A.2d 192 (2002) (The Court held that the Circuit Court correctly dismissed the plaintiff's action for a declaratory judgment and injunctive relief because the plaintiff failed to exhaust its administrative remedy before the Board of Contract Appeals where the case was still pending. With regard to the plaintiff's argument that the Board lacked jurisdiction, Judge Wilner for the Court held that the Board was clearly not "palpably without jurisdiction").

■ Unlike some of the above-cited cases, there is no issue in the present case concerning the Board of Contract Appeals' subject-matter jurisdiction. The Video Lottery Terminals subtitle of the State Government Article, in § 9–1A–36(o), expressly provides that the recourse of an unsuccessful applicant for a video lottery operation license is "review by the

State Board of Contract Appeals." While in some other contexts the Board's jurisdiction may be primary, its jurisdiction under the Video Lottery Terminals subtitle is exclusive. The General Assembly in § 9–1A–02(a) of the subtitle determined that "[t]his subtitle is ... exclusive in its effect." When the General Assembly has specifically stated that an administrative program, including the administrative remedy, is "exclusive," we have given effect to that language and held that the administrative remedy is exclusive rather than primary. *See Holiday Point Marina v. Anne Arundel County,* 349 Md. 190, 201–203, 707 A.2d 829, 834–836 (1998), and cases there cited. *See also Robinson v. Bunch,* 367 Md. 432, 445–446, 788 A.2d 636, 644–645 (2002).[7]

The Circuit Court's declaratory judgment and decisions on the merits were inconsistent with the legislative intent embodied in the Video Lottery Terminals subtitle of the State Government Article, and inconsistent with the principle that exclusive or primary administrative remedies must be exhausted before resort to the courts.

Moreover, the Circuit Court's decision specifically violated the Declaratory Judgments Act, Maryland Code (1974, 2006 Repl.Vol.), §§ 3–401 *et seq.* of the Courts and Judicial Proceedings Article. That statute, in § 3–409(b), states:

---

7. How strongly some members of the Legislature believed in the exclusivity of the Board of Contract Appeals' jurisdiction is illustrated by the Senate version of the bill concerning Video Lottery Terminals. The Senate committee handling the bill added an amendment stating that "[t]he decision of the State Board of Contract Appeals shall be final and is not subject to appeal" to the courts. This amendment was approved by the Senate and was part of the bill when it passed the Senate. *See Journal of Proceedings of the Senate of Maryland, Special Session, October 29, 2007, through November 19, 2007,* for November 1, 2007, at p. 138. This language was ultimately deleted before final enactment of the bill which became Ch. 4. The deletion was probably the result of a determination that precluding judicial review would be unconstitutional. *See, e.g., State v. Board of Education,* 346 Md. 633, 642, 697 A.2d 1334, 1338 (1997); *Criminal Injuries Comp. Board v. Gould,* 273 Md. 486, 500, 331 A.2d 55, 65–66 (1975); *Heaps v. Cobb,* 185 Md. 372, 379, 45 A.2d 73, 76 (1945); *Hecht v. Crook,* 184 Md. 271, 280–281, 40 A.2d 673, 677 (1945).

"Special form of remedy provided by statute.—If a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle."

Section 9–1A–36(o) of the State Government Article is clearly a "special form of remedy for a specific type of case" within the meaning of the Declaratory Judgments Act. We have, in numerous opinions, taken the position that where the General Assembly enacts an exclusive or primary special form of remedy, no action under the Declaratory Judgments Act may be maintained. *See, e.g., Prince George's County v. Ray's Used Cars,* 398 Md. 632, 648–650, 922 A.2d 495, 504–506 (2007); *Md. Reclamation v. Harford County,* 382 Md. 348, 362, 855 A.2d 351, 359 (2004); *Fosler v. Panoramic Design,* 376 Md. 118, 128–129, 829 A.2d 271, 277 (2003); *Furnitureland South, Inc. v. Comptroller, supra,* 364 Md. at 132–133, 771 A.2d at 1065–1066; *Utilities, Inc. of Maryland v. Washington Suburban Sanitary Commission,* 362 Md. 37, 44–45, 763 A.2d 129, 132–133 (2000); *Hartman v. Prince George's County,* 264 Md. 320, 323–324, 286 A.2d 88, 89–90 (1972). *See also Sprenger v. Public Service Commission,* 400 Md. 1, 24–25, 33–38, 926 A.2d 238, 251–252, 257–260 (2007) (both the Court's opinion and the concurring opinion).

## C.

The Circuit Court's theory justifying the exercise of court jurisdiction, prior to an exhaustion of the administrative remedy prescribed by § 9–1A–36(o), is unique, unsound, and would undermine the role of independent adjudicatory administrative agencies such as the Board of Contract Appeals. As earlier discussed, the Circuit Court relied upon the circumstance that the denial of Laurel Racing Association's application by the Location Commission occurred "prior to the awarding of the video lottery operation license," but that the "jurisdiction of the Maryland State Board of Contract Appeals does not" begin until "the awarding of the video lottery operation li-

cense." The Circuit Court held that it could exercise jurisdiction to resolve the dispute "prior to the award of the actual license."

█ The final decision of the Location Commission under the statute as applied to the circumstances of this case, would be to award the single license for an Anne Arundel County location or not to award any license for the Anne Arundel County location. The appeal to the Board of Contract Appeals would be from the final decision of the Location Commission awarding an Anne Arundel County license. The Laurel Racing Association, as an unsuccessful applicant, would be able to maintain an appeal before the Board of Contract Appeals from the decision awarding the license to another applicant and would be able to make all of the arguments which it has made in this litigation.[8] Furthermore, to the extent that Laurel Racing Association may be aggrieved by a final administrative decision rendered by the Board of Contract Appeals, the Association could bring an action in the Circuit Court for judicial review pursuant to the Maryland Administrative Procedure Act, § 10–222 of the State Government Article.

---

8. We have "emphasized that 'Maryland ... administrative agencies are fully competent to resolve issues of constitutionality and the validity of statutes ... in adjudicatory administrative proceedings, which are subject to judicial review.' " *Prince George's County v. Ray's Used Cars*, 398 Md. 632, 650–651, 922 A.2d 495, 506 (2007), quoting *Montgomery County v. Broadcast Equities*, 360 Md. 438, 451 n. 8, 758 A.2d 995, 1002 n. 8 (2000). See also, e.g., *Md. Reclamation v. Harford County*, 382 Md. 348, 366, 855 A.2d 351, 362 (2004) (The "failure to exhaust administrative remedies, before bringing this judicial review action, applies to the federal constitutional issues as well as the state constitutional and nonconstitutional issues"); *Holiday Point Marina v. Anne Arundel County*, 349 Md. 190, 199–200, 707 A.2d 829, 834 (1998) (The adjudicatory administrative agency erred by not ruling on the material constitutional issue); *Maryland Reclamation Assocs. v. Harford County*, 342 Md. 476, 491–492, 677 A.2d 567, 575 (1996) (The administrative agency "would be authorized and required to consider any of the constitutional and other issues raised by Maryland Reclamation to the extent that those issues would be pertinent in the particular proceeding"); *Insurance Commissioner v. Equitable Life Assurance Society*, 339 Md. 596, 617–624, 664 A.2d 862, 873–876 (1995), and cases there reviewed.

■ The Board of Contract Appeals is an independent agency within the Executive Branch of the State Government, and its jurisdiction cannot be exercised until there is a final decision by the head of another agency or unit in the Executive Branch of the State Government. *See Engineering Management Services v. Maryland State Highway Administration, supra*, 375 Md. at 215–216, 825 A.2d at 968; §§ 15–211, 15–220, and 15–221 of the State Finance and Procurement Article. Under the Circuit Court's theory applied in the instant case, whenever there is a preliminary or interlocutory determination by the head of the agency or unit with regard to a procurement contract, which may be adverse to the private contracting party, but the head of the agency or unit has not made a final decision triggering the jurisdiction of the Board of Contract Appeals, the private contracting party need not wait and exhaust the administrative remedy before the Board. Instead, under the Circuit Court's ruling in this case, the private contracting party may immediately file a judicial action and have the court resolve the procurement contract dispute. This would undermine the General Assembly's carefully constructed administrative process for resolving disputes involving state procurement contracts.

There are other independent adjudicatory agencies that the Circuit Court's reasoning could apply to, thereby undermining the jurisdiction of such agencies. For example, the administrative process for adjudicating grievances and disciplinary actions against many employees in the Executive Branch of State Government involves a final decision by the head of the employing agency (or by an Administrative Law Judge to whom the head of the agency has delegated authority), which decision triggers the right of appeal to the Secretary of the Department of Budget and Management. The decision by the Secretary of the Department and Management is the final administrative decision subject to judicial review. *See, e.g., Maryland Aviation Administration v. Noland*, 386 Md. 556, 564–567, 873 A.2d 1145, 1150–1152 (2005); *Maryland Transportation Authority v. King*, 369 Md. 274, 280, 799 A.2d 1246, 1249 (2002). If the head or designee of the head of the

employing agency made a determination adverse to the employee, but the head of the agency had not rendered a final decision triggering the right of appeal to the Secretary of Budget and Management, the employee, under the reasoning of the Circuit Court in this case, could file a court action and have the court resolve the grievance. There are other situations where a final decision by some unit of government triggers the availability of a contested case administrative hearing, and the theory of the Circuit Court in the present case, if valid, could be applied to circumvent the contested case hearing and the need to exhaust administrative remedies.

In addition to its adverse effect on the administrative processes enacted by the Legislature, the Circuit Court's ruling, concerning the exhaustion of administrative remedies, violates the Maryland administrative law principle that parties before administrative agencies may not seek court review from the final decision of a unit or agency but "must ordinarily await a *final administrative decision* before resorting to the courts," *Dorsey v. Bethel A.M.E. Church,* 375 Md. 59, 74–75, 825 A.2d 388, 397 (2003), and cases there cited. The *Dorsey* case discussed at length the difference between a final decision by a particular unit of government and a final *administrative* decision which must be rendered before there is a right to judicial review. *See Driggs Corp. v. Maryland Aviation Administration,* 348 Md. 389, 407–408, 704 A.2d 433, 443 (1998) ("[J]udicial review ordinarily must wait until the entire controversy is decided. That, of course, was not done here. The petition, seeking review of [an earlier] decision, was premature and should have been dismissed on that basis.") *See also* the State Administrative Procedure Act, § 10–222(a) of the State Government Article, limiting the right of judicial review to "a party who is aggrieved by the *final decision in a contested case* " (emphasis added).

Under the Video Lottery Terminals subtitle of the State Government Article, § 9–1A–36(*o*), the final *administrative* decision subject to judicial review would be a final decision by the State Board of Contract Appeals on appeal from the Location Commission's award of the single video lottery oper-

ation license for an authorized Anne Arundel County location. The filing of a court action before that time is premature and must be dismissed.

The proper role of the judiciary is to apply the legislative intent embodied in § 9–1A–36(o) regardless of a litigant's or court's view of the public policy reflected by § 9–1A–36(o). Nevertheless, it is quite reasonable for the Legislature to provide that the Location Commission's award of a license should be the triggering event authorizing an appeal to the Board of Contract Appeals by an unsuccessful applicant. Section 9–1 A–36(p) of the statute provides that the Location Commission is not required to issue a license for an authorized location. If Anne Arundel County refuses to change the zoning in the authorized location so as to permit video lottery terminals, there would be no reason for the Location Commission to issue an Anne Arundel County license. The licensee would not be permitted to use the license because of Article XIX of the Maryland Constitution. In that event, the earlier ruling on Laurel Racing Association's application by the Location Commission would become harmless, as the action of the Anne Arundel County Government would preclude the operation of video lottery terminals in Anne Arundel County by any person or entity.

In sum, the Laurel Racing Association failed to exhaust the statutorily prescribed administrative remedy, and its judicial action should have been dismissed.

*JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY VACATED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO DISMISS THE ACTION. APPELLANT TO PAY 1/2 OF THE COSTS AND APPELLEES TO PAY 1/2 OF THE COSTS.*